**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **JUSTIN REGEHR,** | § |
| **for himself and all** | § |
| **others similarly situated,** | § |
| | § |
| *Plaintiff*, | § |
| | § |
| **V.** | § CIVIL ACTION NO. 1:15-cv-00501 |
| | § |
| **GREYSTAR MANAGEMENT** | § |
| **SERVICES, L.P.,** | § |
| **GREP GENERAL PARTNER, LLC,** | § |
| **GREYSTAR REAL** | § |
| **ESTATE PARTNERS, LLC,** | § |
| **SVF CANTEBREA, LP D/B/A** | § |
| **ALARA CANTEBREA CROSSING, AND** | § |
| **SVF CANTEBREA CORPORATION D/B/A** | § |
| **SVF CANTEBREA GP CORPORATION** | § |
| | § |
| *Defendants*. | § |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Justin Regehr ("Plaintiff" or "Plaintiff Regehr"), for himself and all others similarly situated, files this Original Class Action Complaint and Jury Demand complaining of Defendants Greystar Management Services, L.P., GREP General Partner, LLC, Greystar Real Estate Partners, LLC (collectively "GREYSTAR"), SVF Cantebrea, LP d/b/a Alara Cantebrea Crossing, and SVF Cantebrea Corporation d/b/a SVF Cantebrea GP Corporation as follows:

**I. PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Regehr is an individual residing in Travis County, Texas, and for diversity purposes, a citizen of Texas.

2.      Defendant Greystar Management Services, L.P. ("GMS LP") is a Delaware entity with its principal place of business in Charleston, South Carolina that is registered to conduct business in the State of Texas.  For diversity purposes, GMS LP is a citizen of Delaware and South Carolina.  GMS LP may be served with citation and process though its registered agent, CT Corporation, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

3.      Defendant GREP General Partner, LLC ("GREP GP LLC"), the general partner of GMS LP, is a Delaware entity with its principal place of business in Charleston, South Carolina that is registered to conduct business in the State of Texas.  For diversity purposes, GREP GP LLC is a citizen of Delaware and South Carolina.  GREP GP LCC may be served with citation and process though its registered agent, CT Corporation, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

4.      Defendant Greystar Real Estate Partners, LLC ("GREP"), the sole owners of GREP GP LLC, is a Delaware corporate entity with its principal place of business in Charleston, South Carolina.  For diversity purposes, GREP is a citizen of Delaware and South Carolina.  GREP may be served with citation and process though its registered agent, CT Corporation, 2 Office Part Court, Ste. 103, Columbia, South Carolina 29223.

5.      Defendant SVF Cantebrea LP d/b/a Alara Cantebrea Crossing ("SVF Cantebrea LP") is a Delaware corporation with its principal place of business in Glendale, California that is registered to conduct business in the State of Texas.  For diversity purposes, SVF Cantebrea LP is a citizen of Delaware and California.  SVF Cantebrea LP may be served with citation and process though its registered agent, CT Corporation, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

6.      Defendant SVF Cantebrea Corporation d/b/a SVF Cantebrea GP Corporation ("SVF Cantebrea Corp.") is a Delaware corporation with its principal place of business in Glendale, California that is registered to conduct business in the State of Texas.  For diversity purposes, SVF Cantebrea Corp. is a citizen of Delaware and California.  SVF Cantebrea Corp. may be served with citation and process though its registered agent, CT Corporation, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

7.      Upon information and belief, GMS LP, GREP GP LLC, and GREP are and were, during all or part of the relevant time period, firms or corporations that purport to be the landlord of tenants at apartment houses in Texas and during the relevant time period and have provided management services for Alara Cantebrea Crossing Apartments property during the relevant time period.

8.      Upon information and belief, SVF Cantebrea LP was the owner of the Alara Cantebrea Crossing Apartments property during the relevant time period, and SVF Cantebrea Corp. is the general partner of SVF Cantebrea.  SVF Cantebrea LP and SVF Cantebrea Corp. are collectively referred to herein as "SVFC."

9.      Upon information and belief, SVFC retained GREYSTAR to serve as the management company and landlord of tenants for the Alara Cantebrea Crossing Apartments property.

10.     This Court has personal jurisdiction over Defendants and subject matter jurisdiction over the causes of action as Plaintiff's statutory claims, exclusive of interest and costs, are within the jurisdictional amount of the Court.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b). Plaintiff's claims arose in the Western District of Texas, Austin Division.

12.     The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(d) (the Class Action Fairness Act or "CAFA") because at least one Defendant (SVF Cantebrea Corp.) is a citizen of a state different from Plaintiff, the amount in controversy exceeds $5 million exclusive of interest and costs, and there are more than 100 members of the class. The Court also has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(2) because Plaintiff and Defendants are citizens of different U.S. states, resulting in complete diversity of citizenship, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

## II. INTRODUCTION AND BACKGROUND

13.     This case seeks to certify a class of current and former residential tenants of over 60,000 dwelling units in hundreds of apartment communities in Texas where Defendants (Charleston South Carolina based property management companies and California property owners) are the owner or landlord.

14.     Plaintiff seeks to recover statutory remedies and damages for himself and the putative class for illegal utility connection fees during the four years preceding the date this case was filed (and going forward from the date of filing until a judgment is signed).

15.     Defendants, like most large apartment management companies operating in Texas, are members of the Texas Apartment Association ("TAA") and are licensed to use standardized residential lease forms and addendum forms promulgated by the TAA.  This provides these landlords with consistency and predictability with regard to tenant leases, particularly when apartment properties are bought and sold, and leases are assigned to new owners and their management companies, which is a routine practice in the industry.  As a result,

all members of the Class who are or were tenants at GREYSTAR owned or managed apartment properties during the class period were subject to uniform material contractual provisions.[1]

A.  **GREYSTAR OWNS APARTMENT AND SERVES AS LANDLORD/MANAGER OF OTHER APARTMENT COMPLEXES IN TEXAS FOR SVFC AND OTHER OWNERS**

16.     During the relevant time period, GREYSTAR is believed to have nearly "400,000 residences under management ... rank[ing] 1st among the top 50 U.S. Apartment Managers according to the 2014 National Multi Housing Council Survey."[2] In Texas GREYSTAR is believed to be the owner or landlord/manager of over 60,000 apartment units in hundreds of apartment properties across the State.

17.     In Austin, GREYSTAR is believed to be the owner and/or landlord/manager of over 50 apartment properties, including:

a.     3500 Westlake Apartments
b.     5th Street Commons Apartments
c.     7East Apartments
d.     95Twenty Apartments
e.     Alara Cantebrea Crossing Apartments
f.     Alara Canyon Creek Apartments
g.     Alexan Cantebrea Apartments
h.     Bristol Heights Apartments
i.     Burnet Flats Luxury Apartments
j.     Cielo Apartments
k.     Cityview Apartments
l.     Coldwater Luxury Apartments
m.     Corazon Apartments
n.     Crest at Pearl Apartments
o.     Deerfield
p.     Elan East Apartments
q.     Ethos Apartments
r.     Falcon Ridge
s.     Falconhead
t.     Folio Apartments
u.     Gibson Flats Apartments
v.     Hardrock Canyon

---

[1] There are differences in lease terms that are non-material to this lawsuit, *e.g.*, rent rate, property name, term of lease, and certain amenities unique to a given property.
[2] http://www.greystar.com/client-services/property-management/

w.   Indigo Apartments
x.   Ladera Apartments
y.   Lamar Union Apartments, A Greystar Elan Community
z.   Lantana Hills Apartments
aa.   Madrone Apartments
bb.   Mosaic at Mueller Luxury Apartments
cc.   Nalle Woods Apartments
dd.   Paseo At Bee Cave Apartments
ee.   Pointe 360 Apartments
ff.   Pressler Apartments
gg.   Promesa Apartments
hh.   Rio West
ii.   Riverlodge Apartments
jj.   Riverton at Davis Springs Apartments
kk.   Sabina Apartments
ll.   Sendera Barton Creek
mm.   Terrazzo
nn.   The Boulevard at Town Lake Apartments
oo.   The Park at Lakeline Apartments
pp.   The Preserve at Travis Creek Apartments
qq.   The Reserve at Walnut Creek Apartments
rr.   The Residence Apartments and Lofts at The Triangle
ss.   The Venue on Guadalupe Apartments
tt.   The Village at Gracy Farms Apartments
uu.   Tree Apartments
vv.   Villages at Turtle Rock Apartments
ww.   Villas at Stone Oak Ranch
xx.   Villas on Guadalupe
yy.   Waterstone Apartments
zz.   Whitley Apartments

18.   GREYSTAR is the owner and/or landlord/manager of hundreds of other apartment properties in other cities and towns in Texas, including the Dallas/Fort Worth Metroplex, the Greater Houston area, the Greater San Antonio area, the El Paso Metroplex, the Corpus Christi Metroplex, the Waco Centroplex, the Midland/Odessa area, Texarkana, and the Tyler/Longview area.

19.   Effective June 2, 2014, the second largest property management company in the U.S., Riverstone Residential Group ("Riverstone"), was acquired and merged into the largest property management company in the country, GREYSTAR, with GREYSTAR emerging as the

surviving business group. As a result of the merger of Riverstone and GREYSTAR, GREYSTAR, as the owner or landlord/manager of the Texas apartment properties where Class members' resided during all or part of the class period, is the responsible party that bears legal responsibility for the claims asserted in this case.

20.     GREYSTAR has served and continues to serve as the owner or landlord/manager of each of its apartment houses in Texas during all or part of the relevant time frame. GREYSTAR's senior and executive management are proactively involved in supporting and reviewing property management such that GREYSTAR maintains control over management of its Texas apartment communities and directs the conduct of its onsite employees. GREYSTAR's web-based property management system includes, on information and belief, the system used to bill and collect from tenants unauthorized and illegal utility connection fees. It is believed that GREYSTAR has used and continues to use its standardized forms, policies and practices to charge and collect from Plaintiff and other class members unauthorized and illegal utility connection fees. Further, it is believed that GREYSTAR used its standardized utility billing system to charge and collect from Plaintiff and other class members unauthorized fees. Thus, GREYSTAR's conduct at issue in this case affects Plaintiff and the putative class.

21.     Similarly, SVFC, as an owner, violated its statutory obligations. Thus, SVFC's conduct at issue in this case affects both Plaintiff and the putative class.

**B.      UTILITY CONNECTION FEES ARE ILLEGAL**

22.     *"Texas law does not allow property owners to profit from utility billing by adding extra fees or hidden charges to water and wastewater bills."*[3] Years ago, water and wastewater

---

[3] Texas Commission on Environmental Quality ("TCEQ") publications *Tenant Guide to Submetered Water or Wastewater Service* (GI-277) and *Tenant Guide to Allocated Water or Wastewater Service* (GI-276). *See* http://www.tceq.texas.gov/publications/gi/gi-277.html and http://www.tceq.texas.gov/publications/gi/gi-276.html.

costs typically were built into an apartment tenant's monthly rent payment. Water, like gasoline, used to be cheap. Not anymore. In recent years pervasive drought conditions and a growing population have increased the cost of water and made water conservation a priority in Texas. To offset rising costs and increase rental income, apartment house owners started charging tenants for water separately. In response, the Texas Legislature enacted and later amended Chapter 13, Subchapter M of the Texas Water Code[4] ("the statute"), to specify how apartment house[5] owners[6] are allowed to pass-through their water utility costs to tenants, prevent landlords from using water utility billing as a separate profit center, and encourage conservation through submetering of multifamily properties. Apartment houses built after 2003 generally are required to be equipped with submeters for each dwelling unit to measure a tenant's water usage precisely. Older properties are given the option either to submeter or allocate water charges under a formula set forth in the statute and in rules promulgated originally by the Texas Commission on Environmental Quality ("TCEQ") and later transferred to the Public Utility Commission ("PUC") effective as of September 1, 2014.

23.     The statute is divided into two sets of rules, one for submetered properties and another for non-submetered properties. Generally, the statute prohibits an apartment house owner from imposing on the tenant any extra charge over and above the cost per gallon and any other applicable taxes and surcharges charged by the public utility to the owner.[7] The owner must send the tenant an itemized water bill and maintain adequate records regarding water billing for

---

[4]Texas Water Code Section 13.501 *et seq.*

[5]Under Subchapter M, Section 13.501(1) of the Texas Water Code "apartment house" means one or more buildings containing five or more dwelling units which are occupied primarily for nontransient use, including a residential condominium, whether renter or owner occupied, and having rental paid, if a dwelling unit is rented, at intervals of one month or longer.

[6] Under Section 13.501(5), "'Owner' means the legal titleholder of an apartment house … and any firm, or corporation that purports to be the landlord of tenants in the apartment house …."

[7] *See* TEX. WATER CODE § 13.503(b); *see also* 30 TEX. ADMIN. CODE § 291.125.

inspection by the tenant. In non-submetered properties, the owner additionally must set forth in the rental agreement the method of allocation used and the average monthly water bill for the previous year.[8]

24.     Regardless of whether the apartment house is submetered or if water bills are allocated to tenants using one of the formulas set forth in the PUC rules, an owner or landlord is prohibited from assessing or collecting a fee to initiate water and wastewater utility service to an apartment unit. Such a charge purportedly to initiate water/wastewater service to an apartment unit is a manufactured charge by the landlord because all apartment units are already connected to water and wastewater utilities. As the municipal utility company that provides water and wastewater service to the landlord for the apartment property does not charge such a fee to the landlord when a new tenant moves into an apartment unit, such charges represent an attempt by the owner or landlord to grab extra revenue for water and wastewater service. These types of fees are exactly the kind of surcharge the statute is designed to prohibit and deter through the use of hefty statutory remedies. As a result, fees and surcharges for water and wastewater utilities, charged to tenants at move in or in their initial utility bills from the landlord, whether labeled as utility connection fees, utility activation fees, or other similar fees or other surcharges purportedly to initiate water or wastewater service to an apartment unit are illegal under the Texas Water Code and PUC rules.

25.     The Texas Legislature further added a separate enforcement provision unique to subchapter M of the Texas Water Code and its submetering and nonsubmetering rules. Section 13.505 of the Texas Water Code provides a private right of action for a tenant where he may

---

[8] TEX. WATER CODE § 13.5031(1), (2).

recover three times the amount of any overcharge, a civil penalty equal to one month's rent, reasonable attorney fees, and court costs from an owner who violates the statute.

26.     Plaintiff was charged a utility connection, activation or new account fee or surcharge for water and wastewater ("Utility Connection Fee") in violation of the statutory scheme. He brings this action for himself and all others similarly situated to recover relief specified under this provision of the statute. Standing under Section 13.505 is conferred when the statute is violated irrespective of whether a plaintiff suffers actual damages. In this case, the moment GREYSTAR, as landlord and agent for SVFC, charged Plaintiff and the members of the Class the prohibited Utility Connection Fee, the statute was violated, giving rise to statutory relief.  In addition to standing conferred by the statute when an illegal utility fee is assessed, Plaintiff and each Class member paid the illegal fees charged by Defendants; thus standing is conferred based on both GREYSTAR's assessment and the collection of prohibited fees and surcharges.

## C.     PLAINTIFF REGEHR IS ASSESSED AND CHARGED A UTILITY CONNECTION FEE, AND PAYS IT.

27.     Plaintiff Regehr is a current residential tenant at Alara Cantebrea Crossing, a property owned by SVF Cantebrea LP and SVF Cantebrea Corp. and managed by landlord GREYSTAR.  The physical location of the complex is 8021 North FM 620, Austin, Texas 78726 (hereinafter referred to as "Alara Cantebrea").

28.     On or about June 13, 2013, Plaintiff Regehr and Lindsay Moore[9] each signed a TAA form lease and numerous TAA addendum forms with Alara Cantebrea for a sixteen-month

---

[9] Plaintiff and his co-tenant Lindsay Moore were dating at the time the lease was signed; they are now married. The fee at issue was paid by Plaintiff using either his bank account or his credit card.

term from July 15, 2013 through November 14, 2014 ("Plaintiff's Lease," attached as **Ex. A**)[10].

Riverstone was the landlord and manager of the property at the outset. In or about June 2014,

Riverstone merged into GREYSTAR; from that point to date, GREYSTAR was the landlord and

manager of Alara Cantebrea.  Upon information and belief GREYSTAR is the successor to all

rights and obligations of Riverstone, and is the responsible party for the claims in this case.

29.     Plaintiff's Lease did not authorize GREYSTAR or SVFC to charge Plaintiff a

Utility Connection Fee.  Moreover, such fees are illegal under Chapter 13 of the Texas Water

Code and accompanying PUC rules. Nonetheless, GREYSTAR charged Plaintiff a $12.50

"Utilities -" fee on his first utility bill dated September 1, 2013.  Plaintiff paid the fee.

30.     The $12.50 Utility Connection Fee at issue is simply a made up fee. It is not a fee

or other charge the public utility company (City of Austin) charged GREYSTAR (as the

successor in merger to Riverstone) or SVFC that was passed on to Plaintiff.  The relevant portion

of Plaintiff's electronic ledger created and maintained by GREYSTAR reflecting this Utility

Connection Fee is attached as **Ex. B**.

| | | | |
|---|---|---|---|
| 09/01/13 | Reimbursed Water 07/15/13-08/02/13 | 9.88 | 9.88 |
| 09/01/13 | Reimbursed Trash 07/15/13-08/02/13 | 13.25 | 23.13 |
| 09/01/13 | Reimbursed Sewer 07/15/13-08/02/13 | 3.56 | 26.69 |
| 09/01/13 | Utilities - | 12.50 | 39.19 |
| 09/01/13 | Utilities 07/15/13-08/02/13 | 3.00 | 42.19 |
| 09/01/13 | Rent (09/2013) | 958.00 | 1,000.19 |
| 09/01/13 | PSID29995205-3331 - Web PSID 29995205 - ACH | 1,000.19 | 0.00 |

31.     Notably, each month starting in September 2014 Plaintiff's ledger reflected a

charge for the following five fees: "Reimbursed Water [Specified Dates]," "Reimbursed Trash

[Specified Dates]," "Reimbursed Sewer [Specified Dates], and "Utilities [Specified Dates]," and

---

[10] On or about September 24, 2014, Plaintiff Regehr and Lindsay Moore each signed a renewal
electronic TAA form lease and numerous TAA addendum forms with Alara Cantebrea for a
thirteen-month term from October 15, 2014 through November 14, 2015.

"Rent [Specified Month]."  Only in the first month was Plaintiff charged the $12.50 "Utilities -" fee that was not related to any specific date range.  Greystar has admitted that the $12.50 utility fee was a Utility Connection Fee

32.     In assessing and collecting the $12.50 fee, GREYSTAR and SVFC violated the law.

33.     Statewide, unlawful Utility Connection Fees charged to and collected from Class members during the class period may have varied in amount, but were nevertheless illegal under the Texas Water Code and PUC rules regardless of the amount. The illegal Utility Connection Fees charged to and collected from the Class during the class period are believed to exceed several million dollars, exclusive of statutory trebling and the one-month's rent penalty for each violation.  Adding statutory remedies, the amount in controversy easily exceeds $5 million.

**D.     THE CLASS**

34.     The charges at issue in this case –illegal Utility Connection Fees- believed to have been imposed on all members of the Class were assessed to and collected from Plaintiff by GREYSTAR and by SVFC as the landlord and owner of Alara Cantebrea.

35.     The remaining members of the Class, as defined below, are current or former residential tenants of GREYSTAR properties in Texas.  These GREYSTAR properties are believed to be located in the Austin, Dallas/Fort Worth, Houston, San Antonio, El Paso, Corpus Christi, Midland/Odessa, Waco, Texarkana and Tyler/Longview metropolitan areas.  Because GREYSTAR uses TAA licensed lease and addendum forms, and utilizes standardized computer systems and procedures to bill and collect water, wastewater and charges from its residential tenants in Texas, it is likely class members have suffered the same or similar harm as Plaintiff with regard to Utility Connection Fees.

36.     The members of the proposed Class are ascertainable.  Utility Connection Fees charged by GREYSTAR to the Class are reflected in the tenant ledgers and the monthly water and wastewater utility bills it or its third party billers sent Class members during the class period. As a result, GREYSTAR is required by law to maintain all information needed to identify members of the Class, and any failure on its part to provide such information may not be used to oppose certification of the Class.  Under 16 TEX. ADMIN. CODE § 24.122(e) and (f) (formerly 30 Tex. Admin. Code Section 291.122(e) and (f)), GREYSTAR "shall make … available for inspection by the tenant … (10) any … information necessary for a tenant to calculate and verify a water and wastewater bill…" and "[e]ach of the records required under subsection (e) … shall be maintained for the current year and the previous calendar year, except that all submeter test results shall be maintained until the submeter is permanently removed from service."  Therefore, by law the identities of class members are available and can be ascertained using objectively verifiable data from GREYSTAR's electronic property management databases or those of its third party billers such as NWP and Conservice.

### III.  CLASS ACTION ALLEGATIONS

37.     As set forth below, the proposed Class satisfies the requirements for a class action.

38.     Plaintiff brings the claims for relief alleged in this complaint pursuant to FED. R. CIV. P. 23 on behalf of themselves and a class defined as follows (the "Class"):

> All Texas residents who, within the four years preceding the date this case was filed, were residential tenants of apartment properties in the State of Texas under written leases where GREYSTAR served as owner, landlord or manager, and who were charged and paid a utility connection fee.

The following persons are excluded from the Class:

    (i)     persons who were not charged a Utility Connection Fee or similar utility connection fee for water and wastewater;

    (ii)    the judge(s) assigned to this case and his or her staff;

    (iii)   governmental entities;

    (iv)   GREYSTAR and its affiliates;

    (v)    persons adjudged to be bankrupt; and

    (vi)   persons who have previously released GREYSTAR of the claims raised by this case.

39.    Plaintiff is a member of the Class he seeks to represent, as detailed in the factual background and the claims for relief section of this complaint. The averments of fact and questions of law are common to the Class.

40.    The Class is believed to include well over thirty thousand members.  The Class is so numerous and spread out across the State of Texas that joinder of all members is impracticable.

41.    A Texas statute governs this action. Also, the standardized lease agreements used by GREYSTAR and SVFC in carrying out their management and lessor duties, which leases are forms promulgated by the Texas Apartment Association, are governed by Texas common law and the Texas Property Code.

42.    The averments of fact and questions of law common to the members of the Class predominate over any question affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  A class action is the superior way of resolving the claims raised in this case because:

    a.    The questions of law and fact are so uniform across the Class there is no reason why individual Class members would want to control the prosecution of their own actions at their own expense;

b.    The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great;

c.    The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each and every Class member and not just those who can afford to bring their own actions; and

d.    GREYSTAR and SVFC had actual knowledge of applicable Texas law, and their own lease agreements, yet acted deliberately and intentionally in charging its tenants prohibited fees and surcharges to likely add millions of dollars to their bottom line on the backs of their tenants.  Many, if not all, of the Class members may never discover GREYSTAR and SVFC's wrongful actions in the absence of a class action.  Without this suit, GREYSTAR and SVFC likely will be unjustly enriched by millions of dollars to the detriment of unknowing Class members.

43.    GREYSTAR and SVFC engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class members.  The same claims are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

44.    The injuries sustained by Class members flow, in each instance, from a common nucleus of operative facts.  In each case, GREYSTAR and SVFC charged Class members prohibited Utility Connection Fees in violation of their own form lease agreements and Chapter 13 of the Texas Water Code and accompanying Public Utility Commission rules regarding what fees and surcharges may be assessed to tenants of apartment properties in Texas.

45.     Class members have been damaged by Defendants' misconduct.  Class members have been charged and have paid excessive amounts, allowing Defendants to impermissibly profit by adding extra fees or other surcharges for water and wastewater.

46.     Plaintiff's claims are typical of the claims of the other Class members. Plaintiff was charged impermissible Utility Connection Fees.

47.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is familiar with the basic facts underlying the Class members' claims.

48.     Plaintiff's interests do not conflict with the interests of the other Class members they seek to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously.

49.     Plaintiff's counsel have successfully prosecuted complex class actions, including two similar class action cases involving similar apartment tenant utility billing issues as in this case.  Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class members.

50.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members.  The relief sought per individual Class member is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Defendants' conduct. Furthermore, it would be virtually impossible for Class members to seek redress on an individual basis.  Even if Class members themselves could afford such individual litigation, the court system could not.

51.     Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and to the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform

adjudication, economies of scale, and comprehensive supervision by a single court. Defendants are required by law to maintain the records needed to identify the members of the Class, and on information and belief, this information is stored in GREYSTAR's electronic property management databases, making the information easy to retrieve.

52.    Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

53.    For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## IV. CLAIMS FOR RELIEF

### A.    TEXAS WATER CODE VIOLATIONS AND VIOLATIONS OF PUC RULES

54.    Defendants charged Plaintiff and the Class excessive and impermissible Utility Connection Fees for water and wastewater. This practice is prohibited under Chapter 13 of the Texas Water Code and PUC Rules. *See e.g.*, TEX. WATER CODE §§ 13.502-13.503, 16 TEX. ADMIN. CODE SECTION, Ch. 24 (formerly 30 TEX. ADMIN. CODE Ch. 291 (TCEQ)).

55.    Regardless of whether apartment properties in Texas where GREYSTAR is the landlord allocate water and wastewater usage or utilize submeters, the Texas Water Code and PUC Rules prohibit GREYSTAR from charging Utility Connection Fees for water and wastewater.

56.    Defendants' business practices and its violations of the Texas Water Code and PUC Rules were not the result of a good faith, unintentional mistake. Plaintiff and the Class were charged excessive and improper fees as part of Defendants' systematic leasing, utility allocation and billing, and collection policies for its properties in Texas.

57.     As provided by §13.505 of the Texas Water Code, Plaintiff and the Class seek recovery of statutory damages equal to three times the amount of all overcharges, a civil penalty of one month's rent for each Class member for each violation, reasonable attorneys' fees, prejudgment and post judgment interest at the highest rate allowed by law, and costs of court.

**B.     REQUEST FOR DECLARATORY JUDGMENT REGARDING UTILITY CONNECTION FEE**

58.     Plaintiff seeks a declaration that Defendants may not charge a Utility Connection Fee, and that such charges violate Chapter 13 of the Texas Water Code and PUC Rules. *See e.g.*, TEX. WATER CODE §§ 13.502-13.503, 16 TEX. ADMIN. CODE SECTION, Ch. 24 (formerly 30 TEX. ADMIN. CODE Ch. 291 (TCEQ)).

**C.     REQUEST FOR INJUNCTION REGARDING UTILITY CONNECTION FEE**

59.     Plaintiff seeks an injunction ordering Defendants to cease charging and collecting Utility Connection Fees in violation of Chapter 13 of the Texas Water Code and PUC Rules. *See e.g.*, TEX. WATER CODE §§ 13.502-13.503, 16 TEX. ADMIN. CODE SECTION, Ch. 24 (formerly 30 TEX. ADMIN. CODE Ch. 291 (TCEQ)).

**D.     UNJUST ENRICHMENT**

60.     Plaintiff asserts this cause of action in the alternative to any other causes of action stated herein.

61.     Plaintiff and Class Members agreed to pay to the Defendants only those amounts of money that was legally due.  Defendants collected payments without disclosing that the amount collected was in excess of the statutory legal maximum.  Defendants threatened Plaintiff and the Class with late charges if such illegal charges were not promptly made.  Because Defendants never disclosed to Plaintiff material information regarding the legal maximum charge, Plaintiff was put in an unfair position. As a result of such wrongful conduct, Defendants

derived unjust and unfair profits by overcharging Plaintiff and the class.  Defendants' conduct in this respect is unfair, unjust, deceitful, wrongful, misleading and/or fraudulent, and constitutes larceny.  Defendants' conduct was done to willfully and maliciously injure Plaintiff and the Class Members by depriving them of their property without legal basis.

62.    Defendants fully appreciated the enrichment and benefit accorded to them by retaining monies that should never have been taken, and, once taken, should have been immediately repaid to Plaintiff and Class Members.  Defendants' retention of such monies served to benefit Defendants at the express detriment of Plaintiff and Class Members.  Defendants' retention of monies that should have been paid to Plaintiff and Class Members under the circumstances set forth in this Complaint not only constitutes acts of misconduct, but also is patently unfair, unjust, inequitable, dishonest and fraudulent in relation to Plaintiff and Class Members.

63.    Defendants should not be allowed to retain any part of the amounts they have received in excess of the legal maximum charge, and the Court should order the return of such funds.

**E.    CONSTRUCTIVE TRUST**

64.    In order to prevent Defendants from being unjustly enriched, Plaintiff asks the Court to impose a constructive trust on all funds in bank accounts or any other accounts owned, in whole or in part, by any Defendant.  Such funds in bank accounts were accumulated as a result of Defendants' repeated illegal collection Utility Connection Fees.

**F.    MONEY HAD AND RECEIVED**

65.    Plaintiff paid Utility Connection Fees to Defendants.  Upon information and belief, GREYSTAR has a management agreement with SVFC, and numerous other apartment

owners to manage apartment complexes located in Texas.  Upon information and belief, GREYSTAR has authority to, among other things, (i) negotiate and execute leases on the owners' behalf; (ii) negotiate and execute any amendments, extensions, or renewals to any leases on the owners' behalf; (iii) collect and deposit for the owner rents and other funds related to the property, and to pay itself amounts that are due and to pay other persons as agreed; and (iv) to perform other necessary services related to the leasing and management of the properties.

66.     Upon information and belief, as the management entity GREYSTAR routinely collected Utility Connection Fees and placed them in a designated trust account, remitted the amounts due to SVFC and the property owners of other GREYSTAR managed properties, and retained the remainder for its own account.

67.     As a matter of equity, the illegally collected Utility Connection Fees should be returned to Plaintiff and the Class Members.  Because GREYSTAR acted in the capacity of an agent in the collection and distribution of the Utility Connection Fees, SVFC is also obligated to return the money in its possession that was taken from Plaintiff and the Class.

## V.  JURY DEMAND

68.     Plaintiff asserts his right under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all disputed material fact issues.

## VI.  REQUEST FOR RELIF

69.     Plaintiff seeks an order of this Court certifying this case as a class action for the benefit of the Class with adequate notice to same, and upon final hearing that the Court enter a judgment against Defendants for: (a) statutory damages equal to three times the amount of all illegal fees and surcharges charged to the Class by GREYSTAR and SVFC; (b) statutory

penalties equal to one month's rent for each class member for each statutory violation; (c) prejudgment and post judgment interest at the highest rate allowed by law; (d) reasonable attorneys' fees; (e) court costs; and (f) such other relief, at law or in equity, as the Court may deem just and proper, including but not limited to declaratory relief, injunctive relief, unjust enrichment relief, and relief under the doctrine of money had and received.

Respectfully submitted,

By: */s/ Britton D. Monts*
BRITTON D. MONTS
Bar No. 14303900
THE MONTS FIRM
401 Congress Ave., Suite 1540
Austin, Texas 78701-3851
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Fax

R. MARTIN WEBER, JR.
Texas Bar  No. 00791895
RICHARD E. NORMAN
Texas Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
Telephone: (713) 651-1771
Facsimile: (713) 651-1775

JASON W. SNELL
Bar No. 24013540
THE SNELL LAW FIRM, PLLC
The Littlefield Building
106 E. 6th Street, Suite 330
Austin, Texas 78701
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Fax

***ATTORNEYS FOR PLAINTIFF AND
THE PUTATIVE CLASS***