IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JUSTIN REGEHR, for himself<br>and all others similarly situated, | §<br>§<br>§ | |
| Plaintiff, | § | Case No. 1:15-cv-00501-SS |
| | § | |
| V. | §<br>§ | |
| GREYSTAR MANAGEMENT<br>SERVICES, L.P., GREP GENERAL<br>PARTNER, LLC, GREYSTAR REAL<br>ESTATE PARTNERS, LLC,<br>SVF CANTEBREA, LP D/B/A<br>ALARA CANTEBREA CROSSING,<br>AND SVF CANTEBREA<br>CORPORATION D/B/A SVF<br>CANTEBREA GP CORPORATION, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | § | |

**MOTION FOR NEW TRIAL OR TO ALTER OR AMEND JUDGMENT**
**[Hearing Requested]**

Justin Regehr ("Plaintiff") filed a putative class action in this Court on June 11, 2015. Defendants filed motions to dismiss (ECF 23 and ECF 27). After a hearing on October 14, 2015, on February 8, 2016 the Court granted the motions to dismiss (ECF 50), and entered an Order of Dismissal (ECF 51). Plaintiff timely files this motion for reconsideration or, alternatively, to alter or amend judgment, asking the Court to reconsider its order granting the motion to dismiss as to both Defendants or alter or amend its basis for judgment as to the Greystar Defendants only.

The Court's Order was founded on two grounds: (1) Greystar is not an "owner" under the relevant Water Code Statute (ECF 50 at 4-6); and (2) Plaintiff's allegations are not actionable against SVF (ECF 50 at 6-7). The Court has heard from Plaintiff fully on the second ground for decision. But because the Court did not have briefing on the first issue, which was not raised in

1

the motion to dismiss, Plaintiff addresses it here for the first time and requests that the Court retract its decision on that basis.  Plaintiff further requests to be heard on this issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Water Code

In recent years, pervasive drought conditions and a growing population have increased the cost of water and made water conservation a priority in Texas. To offset rising costs and increase rental income, apartment house owners started charging tenants for water separately, reducing the number of "all bills paid" apartment offerings in Texas.  To encourage water conservation through submetering at apartment houses, the Texas Legislature enacted and later amended Chapter 13, Subchapter M of the Water Code[1] ("the Water Code Statute") to (i) regulate how apartment house[2] owners[3] may pass-through water utility costs to their tenants, (ii) prevent owners from using water utility billing as a separate profit center, and (iii) encourage conservation through submetering of multifamily properties.

### B. Plaintiff files suit for violation of the Water Code

Plaintiff brought this putative class action against Greystar Management Services, L.P., GREP General Partner, LLC, and Greystar Real Estate Partners, Inc. (collectively "Greystar"). Greystar is one of the largest apartment complex management conglomerates in Texas, managing approximately 60,000 units.  ECF 1 at ¶ 13, 17.  Greystar's operational structure is similar to many large apartment entities in Texas.

---

[1] TEX. WATER CODE § 13.501 *et seq.*

[2] Under TEX. WATER CODE § 13.501(1), "apartment house" means one or more buildings containing five or more dwelling units which are occupied primarily for nontransient use, including a residential condominium, whether renter or owner occupied, and having rental paid, if a dwelling unit is rented, at intervals of one month or longer.

[3] Under TEX. WATER CODE § 13.501(5), "'[o]wner' means the legal titleholder of an apartment house … and any firm, or corporation that purports to be the landlord of tenants in the apartment house …."

2

Plaintiff also asserted claims against SVF Cantebra Corporation and SVF Cantebra LP (collectively "SVF"). SVF is the holder of legal title to the property in question.

C. **Defendants file Motions to Dismiss, without any reference to "owner" status**

Defendants filed motions to dismiss (ECF 23 and ECF 27). Those motions to dismiss did not contend, as a basis for dismissal, that Greystar was not an "owner" under the Water Code. Instead, they argued that Plaintiff had failed to state a claim upon which relief could be granted because (1) the fee in question was a "billing convergent fee" and not a water connection fee, and (2) even if it was a water connection fee, it was lawful. (ECF 23 at 3-8; ECF 27 at 2-3).

D. **Greystar raises the "owner" issue at the hearing**

The Court held a status conference on October 14, 2015 and heard oral argument on the motions to dismiss. At the conference, Greystar's counsel—for the very first time—disputed that Greystar was an "owner" for purposes of the Water Code Statute. Trans., 14:4-7. The hearing Transcript ("Trans.") is attached as Ex. 1. Although Plaintiff's counsel briefly responded to the issue, counsel noted that the "owner" issue was not raised in the motion as a ground for dismissal. Trans., 34:1-5.

E. **The Court dismisses Greystar without receiving briefing on the issue**

The Court issued an order granting Greystar's motion to dismiss on February 8, 2016 (ECF 50). The Court dismissed Greystar on the grounds that Greystar was not an "owner" under the Water Code Statute. *Id.* Prior to the issuance of that order, neither side briefed the issue for the Court. The Court entered its Order of Dismissal on the same date (ECF 51).

## II. STANDARD OF REVIEW

Under Rule 59, a motion for reconsideration, or to alter or amend the judgment, is subject to Rule 59(e). *See Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*, 784 F.2d 665, 669-70 (5th Cir. 1986) (en banc). A Rule 59 motion is not the vehicle to raise arguments that were

3

litigated previously, or that might have been litigated.  But it is the proper vehicle to correct a manifest error or to avoid injustice.  *See* 12 Moore's Fed. Prac. § 59.30[5][a][iv]-[v], § 59.30[5][b] (3d. ed. 2015).  This is a classic occasion for such a motion.

As the Fifth Circuit has explained, "[a] motion for a new trial or to amend a judgment 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"  *Garriott v. NCsoft Corp.*, 661 F.3d 243, 248 (5th Cir. 2011) (quoting *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir. 1990)).  It necessarily follows that such a motion is appropriate to raise arguments that could **not** have been addressed prior to judgment, such as grounds for dismissal that were not set forth in a motion to dismiss.

Furthermore, as set forth in detail below, the Court's interpretation of the term "owner" in the Water Code Statute is a manifest error of law.  The Court may correct that error without altering its disposition of the case, should it choose to adhere to its other basis for judgment.  At a minimum, therefore, the Court should alter or amend its judgment with respect to "owner" status.

### III. ARGUMENT

Naturally, Plaintiff respectfully disagrees with this Court's determination that his allegations do not state a claim on the merits.  (ECF 50 at 6-7).  Plaintiff formally requests that the Court reconsider its decision on that basis and reinstate the case, either denying the motion or granting Plaintiff leave to amend and plead his allegations with greater specificity.  *See*, *e.g.*, *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."); *see also  U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (recognizing that "a motion to reconsider" a dismissal order is a proper vehicle

through which a plaintiff can "move[] to amend his complaint"). Still, Plaintiff acknowledges that he has been fully heard on these issues and the Court has made a considered decision; thus, he will not burden the Court with additional briefing on those issues.

On the other hand, the Court did not receive any briefing on the issue of "owner" status, so this motion is the first opportunity for Plaintiff to address that issue. Whatever the Court chooses to do on the main issue, at the very least it should alter or amend its judgment to omit the question of "owner" status as a basis for judgment in favor of Greystar. That ground was not set forth in the motion to dismiss, is not legally correct, and will have unintended consequences for third parties if it is allowed to stand. Because the issue has significance in other similar cases pending in state and federal courts, Plaintiff requests the opportunity to fully brief this issue and be heard.

## THE COURT ERRED BY DISMISSING GREYSTAR ON THE BASIS OF "OWNER" STATUS

The question presented is whether a property management company like Greystar falls within the definition of an "owner" under the Water Code Statute. The Court answered this in the negative:

> The Court first turns to Greystar's claim that it does not fall within the purview of § 13.503(b) because it is not an apartment house owner or landlord. Because the Court agrees with Greystar's argument, it grants Greystar's motion to dismiss.

ECF 50 at 3. This ruling was a manifest legal error.

### A. Complaints should not be dismissed on grounds that were not set forth in a Rule 12(b)(6) motion.

First, failure to state a claim upon which relief can be granted is a defensive theory that must be raised "by motion." Fed. R. Civ. P. 12(b)(6). In the present case, Greystar did not file a Rule 12 motion raising the "owner" issue, so Plaintiff had no opportunity to address that issue. The Fifth Circuit has held that "the district court can only dismiss an action on its own motion

'as long as the procedure employed is fair,'" and that court has "further suggested that fairness in this context requires "both notice of the court's intention and an opportunity to respond."'" *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (internal citation omitted). Because Plaintiff did not have notice and an opportunity to respond to the "owner" argument, which first arose during the status conference, this ground for decision should be set aside. At a minimum, the Court should reconsider the issue on the merits after full briefing and argument.

**B.    Greystar is an "owner" under the Water Code Statute.**

Second, on the merits, the Court should retract its ruling that Greystar is not an "owner." That ruling, rendered without the aid of any briefing, misinterpreted the Water Code Statute.

**1.    An "owner" is, *inter alia*, one who "purports" to be a "landlord."**

The Water Code defines "owner" to include a company "that purports to be the landlord." The Water Code states that an "owner" is any entity that is:

> the legal titleholder of an apartment house, manufactured home rental community, or multiple use facility **and any individual, firm, or corporation that purports to be the landlord of tenants in the apartment house**, manufactured home rental community, or multiple use facility.

TEX. WATER CODE § 13.501(5) (emphasis added). By using the conjunction "and," the Water Code Statute unambiguously contemplates that a single "apartment house" could have multiple "owners," including both the "legal titleholder of an apartment house" and any entity that "purports to be the landlord of tenants in the apartment house."

In addition, by using the phrase "purports to be," the Legislature broadly defined the role of a "landlord of tenants." As a verb, "purport" means "to claim to be or do a particular thing when this claim may not be true,"[4] or to "[a]ppear to be or do something, especially falsely."[5]

---

[4] http://www.merriam-webster.com/dictionary/landlord (viewed March 7, 2016).

[5] http://www.oxforddictionaries.com/us/definition/american_english/purport (viewed March 7, 2016).

6

The Legislature plainly intended the second clause in the statutory definition of "owner" to cover not only legal titleholders and landlords in the technical sense, but also parties that "claim" or "appear" to be landlords—even if they do so "falsely." That broad definition precisely defines the management role fulfilled by Greystar. In this instance, whether Greystar purported to be Plaintiff's landlord in the lease and through its conduct is a fact issue, and therefore is not suitable for determination at the Rule 12b stage.

In this respect, the Texas Supreme Court decision in *Entergy Gulf Stats, Inc. v. Summers*, 282 S.W.3d 433 (Tex. 2009), is instructive. In *Entergy*, the Supreme Court sought to determine whether a "premises owner" could fall within the definition of "general contractor." *Id.* at 437. "General contractor" was defined by the statute in question as one "who 'undertakes to procure the performance of work.'" *Id.* Because the words making up that definition were not defined, the Court "applied a meaning that is consistent with the common understanding of those terms," finding that "undertake" generally means to "take on an obligation or task," and "procurement" means "the act of getting or obtaining something." *Id.* at 437-38. The Court thus concluded that a "general contractor is a person who takes on the task of obtaining the performance of work." *Id*. at 438. Because that broad definition "describes precisely what Entergy did," *id.*, the Court concluded that a "premises owner" could fall within the definition of "general contractor." *Id.* The broad language of the statute dictated that conclusion even though one would not ordinarily consider a "premises owner" to be a "general contractor." *Id*. When the Legislature chooses to define terms broadly, courts are duty-bound to give effect to those definitions.

Applying the *Entergy* analysis here, the dispute centers on whether a leasing agent or management company like Greystar can be an "owner" when the definition of "owner" includes "a company that purports to be the landlord of tenants," and when the definition was not drafted to exclude apartment management companies and agents of the titleholder.

7

Greystar is the largest apartment management company in the USA. ECF 1 at ¶¶ 16, 19. It manages over 60,000 units across Texas, including 50 properties in Austin. *Id*. at ¶¶ 16-18. Greystar "maintains control over management of its Texas apartment communities and directs the conduct of its onsite employees," *id*. at ¶ 20, implementing and administering systems that "bill and collect from tenants unauthorized and illegal utility connection fees." *Id*. Under the plain language of the Water Code Statute, Greystar "purports to be the landlord" and is thus an "owner."

### 2. The plain and ordinary meaning of "landlord" is broad and includes management companies and agents of the legal titleholder.

The term "landlord" is not defined in the Water Code Statute or the PUC rules that implement the Water Code Statute. Accordingly, this Court should give the term its plain and ordinary meaning, with appropriate attention to the context of this Water Code Statute and the common usage of the term in the industry.

To begin, dictionary definitions of "landlord" reach the manager of an apartment house. Merriam-Webster provides this full definition of the term "landlord": "(1) the owner of property (as land, houses, or apartments) that is leased or rented to another; (2) the **master** of an inn or **lodging house:** innkeeper."[6] This second definition perfectly fits Greystar.

Statutory definitions of "landlord" are comparably broad. Both nationally and in Texas, the definition of "landlord" is expansive and covers leasing agents and management companies. In Texas, one section of the Texas Property Code that applies to apartments defines "landlord" to include both a "managing company" and a "managing agent." *See* TEX. PROP. CODE § 92.151(7)

---

[6] http://www.merriam-webster.com/dictionary/landlord (viewed March 7, 2016) (emphasis added). British usage is comparably broad. *See* http://www.oxforddictionaries.com/definition/english/landlord (viewed March 7, 2016) ("1. A man (in legal use also a woman) who rents out land, a building, or accommodation. 1.1 A man who keeps **lodgings**, a **boarding house**, or a pub.") (emphasis added). Likewise, this Court cited a definition that refers to a "rooming house." ECF 50 at 5 (citation omitted).

("'Landlord' means a ... **management company, or managing agent**, including an on-site manager")[7] (emphasis added); *see also id.* § 94.001 ("landlord" means "the owner **or manager** of a manufactured home community **and includes an employee or agent** of the landlord") (emphasis added). Greystar is unmistakably familiar with this broad definition, as it appears in a subsection of the Property Code that expressly applies to security devices at apartments. Therefore, it cannot be said that the Texas Legislature generally takes a narrow view of the term; on the contrary, the Legislature has codified the broad definition reflected in the dictionary.

This broad definition of "landlord" comports with the definition used in other states, confirming that the ordinary meaning of the term includes both the legal titleholder and the "manager" of residential property such as an apartment complex.[8]

Therefore, ordinary dictionary definitions, definitions codified by other Texas statutes, and definitions codified by similar statutes nationally all confirm that Greystar is a "landlord" under the Water Code Statute—and at the very least, it "purports to be the landlord."

---

[7] This subsection of the Property Code expressly applies to apartments. TEX. PROP. CODE § 92.152(b)(4) ("a dwelling to which this subchapter applies includes: ... (4) a living unit in an apartment ...").

[8] *E.g.,* Colorado (C.R.S.A. § 38-12-502(3) "Landlord" means the owner, manager, lessor, or sublessor of a residential premises."); Delaware (25 Del.C. § 5141 "(15) "Landlord" shall mean: a. The owner, lessor or sublessor of the rental unit or the property of which it is a part and, in addition, shall mean any person authorized to exercise any aspect of the management of the premises...b. Any person held out by any landlord as the appropriate party to accept performance, whether such person is a landlord or not; or c. Any person with whom the tenant normally deals as a landlord"); Hawaii (HRS § 521-8 "Landlord" means the owner, lessor, sublessor, assigns or successors in interest of the dwelling unit or the building of which it is a part and in addition means any agent of the landlord"); Michigan (M.C.L.A., Landlord and Tenant Relationships, 554.601, Sec. 1, (c) "Landlord" means the owner, lessor, or sublessor of the rental unit or the property of which it is a part and, in addition, means a person authorized to exercise any aspect of the management of the premises..."); Mississippi (Miss. Code Ann. § 89-8-7 (d) "Landlord" means the owner, lessor or sublessor of the dwelling unit or the building of which it is a part, or the agent representing such owner, lessor or sublessor"); New Hampshire (N.H. Rev. Stat. § 540-A:1, I "Landlord" means an owner, lessor or agent thereof who rents or leases residential premises ... "); Washington (RCWA 59.18.030 (11) "Landlord" means the owner, lessor, or sublessor of the dwelling unit or the property of which it is a part, and in addition means any person designated as representative of the owner, lessor, or sublessor including, but not limited to, an agent, a resident manager, or a designated property manager.")

9

### 3. The Legislature knows how to limit the meaning of "landlord" but did not do so in the Water Code Statute.

To be sure, the Legislature would be free to codify a narrower definition of "landlord." This Court held that it did so, assuming that "landlord" has the same meaning in the Water Code Statute as in one section of the Property Code. *See* ECF 50 at 6 (relying on TEX. PROP. CODE § 92.001(b)). That statute defines "landlord" as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease." *Id*. As that statute illustrates, the Legislature might choose to codify a narrow definition of "landlord" in some circumstances. But it did not do so in the Statute in question in this case.

In the Water Code, the Legislature did not exclude managers and agents from the definition of "landlord" and did not place restrictions on how one can "purport to be a landlord." Likewise, the PUC has never attempted to restrict the broad definition of "owner" or "landlord" in its rules.

The Legislature could have chosen to restrict the reach of "owner" in the Water Code to the legal titleholder, but it did not do so; it extended that definition to both the legal titleholder and any other company "that purports to be the landlord of tenants in the apartment house . . . ." TEX. WATER CODE § 13.501(5) (emphasis added). And the Legislature could have chosen to restrict the reach of "landlord" in the Water Code by language expressly excluding the agents or management companies, as it did in TEX. PROP. CODE § 92.001(b). But it did not do that either. Far from suggesting that a limited definition of "owner" or "landlord" should control this case, the absence of any similar limitation in the Water Code demonstrates that the Legislature fully intended the term "landlord" to have its full, ordinary meaning.

10

At the end of the day, a leasing agent and management company such as Greystar is an "owner" under the Water Code Statute because it "purports to be the landlord of the apartment house."

### 4. The Court's ruling fails to give effect to the ordinary meaning of "landlord" and renders language in the Water Code Statute surplusage.

Relying on the American Heritage College Dictionary, this Court confined the term "landlord" to the owner of the property or an "innkeeper." It held that a management company like Greystar is not an "innkeeper" because an apartment complex is not an "inn." ECF 50 at 5. But that reasoning overlooks the fact that the very definition quoted by the Court refers to one "who runs a rooming house,"[9] similar to the Merriam-Webster reference to a "lodging house." An apartment house is a "rooming house" and thus its manager is a "landlord."

Indeed, the Water Code Statute expressly refers to "the landlord of tenants **in the apartment house**." TEX. WATER CODE § 13.501(5) (emphasis added). Clearly, therefore, the Legislature intended its use of "landlord" to apply to apartment houses. The Court's interpretation of the term "landlord" would essentially nullify the second half of the statutory definition, because no party other than the legal titleholder could qualify as "the landlord of tenants in the apartment house."

Moreover, the Court's reasoning would nullify the "purports to be" clause of the Water Code Statute. If an "owner" is both "the legal titleholder" and one "who purports to be the landlord of tenants," *id*., yet the only person who can qualify as a "landlord" in the context of an apartment house is the legal titleholder, the definition is circular. If one is an owner by virtue of holding legal title, there is no need to "purport to be" the owner. If the "landlord" can only be

---

[9] ECF 50 at 5 (quoting *Landlord*, THE AMERICAN HERITAGE COLLEGE DICTIONARY (4th ed. 2002)).

11

the legal titleholder, in other words, the "purports to be" clause in the Water Code Statute is rendered meaningless.

Both of these consequences are unacceptable under the canons of statutory construction. *See*, *e.g.*, *Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987) ("We will give effect to all the words of a statute and not treat any statutory language as surplusage if possible."); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.") (citation omitted).

By expressly including those who merely "purport to be" a "landlord of tenants" in an "apartment house," the Legislature clearly intended the definition of "owner" to include parties who are not the "legal titleholder" of the apartment house. Greystar falls squarely within the text of the Water Code Statute. This Court should not create an exception for management companies and agents that does not appear in the text of the Water Code Statute.

### 5.   The lease in this case is consistent with this interpretation of "owner."

Finally, it is noteworthy that the lease in this case conforms to the broad definitions of "owner" and "landlord" embraced by the Water Code Statute. Greystar acknowledged in the lease that not only the legal titleholder stands in the role of "owner." In an addendum to the operative lease, "owner" was defined to include "the dwelling owner named in your lease, Riverstone Residential [the management company that was acquired by Greystar, *see* Complaint ¶ 19][10] and their respective partners, employees, officers, directors, agents and servants." Ex. A

---

[10] Paragraph 19 states:

> Effective June 2, 2014, the second largest property management company in the U.S., Riverstone Residential Group ("Riverstone"), was acquired and merged into the largest property management company in the country, GREYSTAR, with GREYSTAR

to the Complaint, ECF 1-1 at 27 ("Lease Addendum Community Policies, Rules and Release").[11]

In other words, Greystar recognizes in its day-to-day business that it functions as an "owner" under the lease—precisely as the Texas Legislature contemplated in the Water Code Statute.

As discussed *supra*, at (b)(3), the Court's order relied on the definition of "landlord" set forth in TEX. PROP. CODE § 92.001(b). ECF 50 at 6. That statute defines "landlord" as "the owner, lessor, or sublessor of a dwelling, but does not include a manager or agent of the landlord **unless the manager or agent purports to be the owner, lessor, or sublessor in an oral or written lease**." *Id*. (emphasis added). As demonstrated, Riverstone Residential [the management company that was acquired by Greystar] purported to be the "owner" in a written lease when it included itself in the written definition of "owner." Even under the Court's prior analysis, Greystar would be an entity "purporting to be a landlord," and, therefore, an "owner" under the Water Code. At the very least, this is a fact issue not yet resolved at this early stage of the case.

**C.     The Court's ruling threatens unintended consequences for third parties.**

One of the reasons courts ordinarily refrain from deciding issues that are not presented in formal briefing is the risk that a decision will have unintended consequences. In this situation, that risk is very real. Thousands of Texas residents live in residential properties that are subject to regulation by the Property Code, the Water Code, and other provisions of the Texas statutes. Those statutes frequently impose obligations on "owners" and "landlords."

---

> emerging as the surviving business group. As a result of the merger of Riverstone and GREYSTAR, GREYSTAR, as the owner or landlord/manager of the Texas apartment properties where Class members' resided during all or part of the class period, is the responsible party that bears legal responsibility for the claims asserted in this case.

[11] Plaintiff does not have the entirety of the addendum. It appears that the page was cut off during copying by the leasing agent when it was provided to Plaintiff. As Plaintiff has not been able to conduct discovery in this matter, and Greystar provided no documents in response to discovery, Plaintiff is unable to provide the entirety of the lease addendum to the Court.

A decision by this Court holding that an apartment management company is not a "landlord" or "owner" for purposes of those statutes could have far-reaching consequences—implicating the rights and obligations of management companies and tenants all across Texas. Indeed, such a ruling could also interfere with governmental enforcement efforts directed against "owners" or "landlords" of such properties, if management companies such as Greystar are able to rely on this Court's opinion for the proposition that they are immune from Texas statutes. Already, counsel for Plaintiff have encountered cases in which other management companies have invoked this Court's ruling as a basis to avoid legal responsibility under other statutes. Rather than risk a misreading of the Texas statutes that could have far-reaching consequences, this Court should retract its erroneous decision on the "owner" issue.

## CONCLUSION

At the hearing on its motion to dismiss, Greystar's counsel first raised the "owner" issue and predicted that "there is no case in the state of Texas holding that the management company, which is the agent of the owner, is a landlord for any purpose. I'm going to bet that's going to be the law." Trans., 32:15-19. That was a bad bet. Now that Plaintiff has had an opportunity to study and brief the issue, it is apparent that the Legislature has **codified** precisely that definition, consistent with the ordinary meaning of the term "landlord" and statutes in many other states. Greystar led this Court into error, and the Court should correct the error before it is too late.

Plaintiff respectfully requests that this Court reconsider its dismissal order and reinstate Plaintiff's complaint. Alternatively, Plaintiff requests that he be given leave to amend and state a claim in accordance with this Court's ruling. At the very least, Plaintiff asks the Court to omit the "owner" analysis as a ground for its dismissal ruling, confining any ruling to the merits of Plaintiff's complaint.

Respectfully submitted,

By: */s/ Britton D. Monts*
BRITTON D. MONTS
Bar No. 14303900
THE MONTS FIRM
401 Congress Ave., Suite 1540
Austin, Texas 78701-3851
bmonts@themontsfirm.com
(512) 474-6092 – Telephone
(512) 692-2981 – Fax

R. MARTIN WEBER, JR.
Texas Bar  No. 00791895
RICHARD E. NORMAN
Texas Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, Texas 77056
rnorman@crowleynorman.com
mweber@crowleynorman.com
Telephone: (713) 651-1771
Facsimile: (713) 651-1775

JASON W. SNELL
Bar No. 24013540
THE SNELL LAW FIRM, PLLC
The Littlefield Building
106 E. 6th Street, Suite 330
Austin, Texas 78701
firm@snellfirm.com
(512) 477-5291 – Telephone
(512) 477-5294 – Fax

*ATTORNEYS FOR PLAINTIFF AND
THE PUTATIVE CLASS*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing service pursuant to the Federal Rules of Civil Procedure on this 7th day of March, 2016.

*/s/ Britton D. Monts*
BRITTON D. MONTS