IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JUSTIN REGEHR,<br>for himself and all<br>others similarly situated, | § <br> § <br> § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE No. 1:15-cv-00501 |
| | § | |
| GREYSTAR MANAGEMENT<br>SERVICES, L.P.,<br>GREP GENERAL PARTNER, LLC,<br>GREYSTAR REAL ESTATE<br>PARTNERS, LLC, SVF CANTEBREA,<br>LP D/B/A ALARA CANTEBREA<br>CROSSING, AND SVF CANTEBREA<br>CORPORATION D/B/A SVF<br>CANTEBREA GP CORPORATION | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |
| | § | |
| Defendants. | § | |

**GREYSTAR MANAGEMENT SERVICES, L.P.,
GREP GENERAL PARTNER, LLC, GREYSTAR REAL ESTATE
PARTNERS, LLC, SVF CANTEBREA CROSSING AND SVF
CANTEBREA CORPORATION D/B/A SVF CANTEBREA GP CORPORATION'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Greystar Management Services, L.P., GREP General Partner, LLC, Greystar Real Estate

Partners, LLC (collectively, "Greystar") and SVF Cantebrea Crossing and SVF Cantebrea

Corporation d/b/a SVF Cantebrea GP Corporation ("SVF") (collectively, Greystar and SVF are

referred to as "Defendants" herein) file this Motion to Dismiss First Amended Complaint,

pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7) and 23 (the "Motion"), seeking

dismissal of the First Amended Complaint [DE 63] (the "Complaint") filed by Plaintiff Justin

Regehr ("Plaintiff" or "Regehr") on behalf of himself and a putative class, and respectfully state

as follows:

# I. SUMMARY

Plaintiff claims that a one-time $12.50 fee that he was charged in relation to a residential apartment lease was an unlawful water surcharge and seeks to certify a class of the residents of over 60,000 apartment units statewide to recover the allegedly unlawful fee, plus statutory damages and attorney's fees. But Plaintiff's Complaint should be dismissed because he lacks standing, failed to state a claim upon which relief can be granted and failed to join indispensable parties. Further, Plaintiff's class allegations should be dismissed because they are insufficient and overbroad.

First, under the exhaustion doctrine, Plaintiff was required to exhaust his administrative remedies with the Public Utility Commission of Texas ("PUC") prior to filing this lawsuit, but Plaintiff failed to pursue any remedies through the PUC before filing suit. The consequence of Plaintiff's failure to exhaust administrative remedies with the PUC is that this Court lacks subject matter jurisdiction over Plaintiff's claims.

Second, even if the Court had subject matter jurisdiction over Plaintiff's claims, the Lease and related documents in this case make clear that the $12.50 fee charged was a "billing convergent fee" for the purpose of consolidating the bills relating to Plaintiff's apartment unit into a single bill and not a water surcharge as alleged by Plaintiff. Although Plaintiff now disputes the authenticity of the Riverstone Residential Group Rent Addendum ("Rental Addendum") that Plaintiff failed to attach to his Original Complaint and which contradicts Plaintiff's allegations, other documents relating to the Lease, including the Reservation Agreement and bill that Plaintiff received from RockCreek, a third-party billing company, also provide that the $12.50 fee is for a "billing convergent fee" and not a water surcharge. Plaintiff has failed to plead facts that permit the Court to infer more than the mere possibility of

misconduct and that are not compatible with, and more likely explained by, lawful behavior and Plaintiff has therefore failed to state a claim on which relief can be granted. Defendants' Motion to Dismiss Plaintiff's Original Complaint was dismissed based on the plain meaning of the "billing convergent fee" and the First Amended Complaint should be dismissed on the same basis.

Third, Plaintiff's claim should be dismissed because he has failed to join indispensable third parties in this lawsuit. In particular, Plaintiff seeks to certify a class relating to numerous apartment complexes owned by different entities who utilized different third-party billing companies to charge the "billing convergent fee" or similar fees. Although Greystar is the common thread that ties many of these apartment owners together, Greystar did not charge the fee or receive the fee at issue in this litigation. Similarly, SVF is not involved in the vast majority of the complexes targeted by Plaintiff's lawsuit. As a result, the third-party billing companies and other property owners are indispensable parties to this litigation. Without the involvement of these parties in this proceeding, there will be prejudice to such parties and the Court cannot grant adequate relief and given that Plaintiff has an effective alternative forum in which to pursue his claim—the PUC—the lawsuit should be dismissed.

Finally, regardless of whether Plaintiff has stated an individual claim, class treatment is so facially unworkable that dismissal of the class allegations is justified. The Complaint contains only conclusory class allegations and is silent about why the existence of separate apartment complexes, owned by separate entities, charging separate fees, through separate billing services—which are not even named in this lawsuit—to individuals using different third-party services justifies the class Plaintiff seeks to represent. Further, the remedies available under the Texas Water Code make it implausible for Plaintiff to claim that a class action is superior to

GREYSTAR MANAGEMENT SERVICES, L.P., GREP GENERAL PARTNER, LLC, GREYSTAR REAL ESTATE PARTNERS, LLC, SVF CANTEBREA CROSSING AND SVF CANTEBREA CORPORATION D/B/A SVF CANTEBREA GP CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT—PAGE 3
4435219v1 (79980.00002.000)

other available methods for fairly and efficiently adjudicating this case. Plaintiff's insufficient pleadings and overly broad class definition do not support class treatment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On or about July 15, 2013, Plaintiff entered into a lease to occupy an apartment unit owned by Defendant SVF Cantebrea LP d/b/a Alara Cantebrea Crossing and managed by Greystar (the "Lease"). The Lease explicitly identifies SVF Cantebrea LP as the "owner" and Plaintiff and Lindsay Moore as tenants and occupants.[1] Greystar is not the owner and does not purport to be the landlord of the apartment complex.[2] The original Lease term was extended by agreement and ultimately expired on November 14, 2014.

In September 2013, Plaintiff paid a one-time $12.50 billing convergent fee (the "Fee") which now forms the basis of his putative class action. Plaintiff alleges that the Fee is unlawful based on the bald assertion that it is related to water and/or wastewater.[3] Plaintiff hopes to certify a class of Texas residents that paid a similar Fee at apartment communities owned by SVF and/or managed by Greystar. Notably, Plaintiff filed this lawsuit without exhausting the administrative remedies available to him through the PUC.

Plaintiff's claims rely on one unsupported and flawed assumption—the Fee was actually an unlawful water utility surcharge. But the face of the Complaint, the documents referenced and attached to the Complaint and the documents reasonably related to Plaintiff's claims show

---

[1] *See* Amend. Comp. Ex. A, p 1.

[2] Although Plaintiff asserts that the Lease Addendum Community Policies, Rules and Release defines "owner" to include Riverstone Residential Group, that document is clear that the definition is only for purposes of the acknowledgments in the addendum. The Addendum makes clear in the first paragraph that Greystar is the management company. Similarly, the first page of the Addendum refers to the Lease between Tenant and Owner—not Greystar. Although Greystar performs functions as an agent of the owner, at no point has it claimed to be an owner or landlord for the apartment complex at issue in this lawsuit.

[3] *See* Amend. Comp. ¶¶ 42-60.

that Plaintiff has failed to state a claim. Furthermore, even if Plaintiff had stated a claim, Plaintiff has failed to exhaust administrative remedies and join indispensable parties in this litigation—pleading deficiencies which require dismissal.

The Lease includes several ancillary documents and addenda, all of which are explicitly incorporated by the terms of the Lease which is attached to Plaintiff's First Amended Complaint. As with his Original Complaint, Plaintiff once again fails to attach the Rental Addendum which establishes that Plaintiff's claims have no merit. Instead, Plaintiff now—for the first time—claims to dispute the authenticity of the Rental Addendum even though it indisputably bears his signature.[4] The Rental Addendum describes the true nature of the Fee and it plainly states the Fee is a "billing convergent fee" instead of a water surcharge as alleged by Plaintiff. More specifically, the Rental Agreement provides: "Residents will receive a one-time $12.50 billing convergent fee on the first statement received."[5] A billing convergent fee is a fee that is charged by a third-party billing company and is collected from a tenant for the purpose of consolidating a tenant's numerous bills relating to an apartment unit into a single bill which is electronically billed.

Notwithstanding the fact that Plaintiff now apparently disputes the authenticity of the Rental Addendum, the Rental Addendum is consistent with the other documents related to the Lease and Fee. In particular, the Reservation Agreement—similar to the Rental Addendum—provides that "Residents will receive a one time non-refundable $12.50 billing convergent fee on their first statement."[6] Furthermore, the August 21, 2013 bill that Regehr received from third-

---

[4] *See* Ex. 1 hereto, which is a true and correct copy of the Rental Addendum signed by Regher.

[5] *See* Ex. 1.

[6] *See* Ex. 2 hereto, which is a true and correct copy of the Reservation Agreement signed by Regher.

party biller RockCreek reflects that he was charged $12.50 for "Convergent Bill Activation Fee Flat Charge." (the "RockCreek Bill").[7]  Notably, the Convergent Bill Activation Fee Flat Charge included on the RockCreek bill is a separate billing entry from the (1) Water Base Charge, (2) Water Consumption, (3) Sewer Base Charge, (4) Sewer Consumption, (5) Stormwater Fee, (6) Trash Allocation Charge, (7) Trash Admin. Fee and (8) Pest Control Fee which reflects that it is separate and distinct from the water charges detailed in the bill.[8]

Based on the "billing convergent fee," Plaintiff filed his Original Complaint against Defendants on or about June 11, 2015 [DE 1].  Plaintiff's Original Complaint was dismissed, however in response to a Motion for New Trial which was granted in part and denied in part, Plaintiff was given leave to file his Amended Complaint [DE 63].  The Amended Complaint does nothing to address the fatal flaws with Plaintiff's claims and should be dismissed.

## III. ARGUMENTS AND AUTHORITIES

Plaintiff's claims are all based on the same faulty premise:  that Defendants charged an allegedly impermissible water surcharge.  Not only did Plaintiff fail to exhaust his administrative remedies before filing this lawsuit, but his contention is also incorrect.  The Rent Addendum, Reservation Agreement and RockCreek bill unequivocally demonstrate that the Fee was a "billing convergent fee," and not a "water surcharge."  Plaintiff fails to provide adequate support for the allegation that the "billing convergent fee" was a water surcharge.  Moreover, regardless of whether Plaintiff states an individual claim, his failure to exhaust administrative remedies, failure to include indispensable parties to this litigation and the fact that class treatment is facially unworkable warrant dismissal.

---

[7] *See* Ex. C to Amend Comp.

[8] *See* Ex. C to Amend. Comp.

A.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] As the Supreme Court explained in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

Although a court must accept all well-pleaded factual allegations as true when it considers a motion to dismiss, that rule does not apply to a legal conclusion that is "couched as a factual allegation."[11]    Additionally, even where a complaint presents appropriate factual allegations, a court must determine whether the allegations, accepted as true, "plausibly give rise to an entitlement to relief."[12] The allegations must "permit the court to infer more than the mere possibility of misconduct."[13]

In determining whether a plaintiff has met its burden under *Twombly* and *Iqbal* to state a plausible claim to relief, the Court may consider certain documents attached to a motion to dismiss without converting it into a motion for summary judgment.[14] In doing so, the Fifth Circuit has noted that the key consideration is whether, by attaching these documents, the "defendant merely assists the plaintiff in establishing the basis of the suit, and the court in

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

[10] *Iqbal*, 556 U.S. 678.

[11] *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678-79.

[12] *Iqbal*, 556 U.S. at 679.

[13] *Id.*

[14] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

making the elementary determination of whether a claim has been stated."[15]  Where, as here, the

defendant attaches a contract to its motion to dismiss, the contract was referred to in the

complaint, and the contract is central to the plaintiff's claims, the Court may consider the terms

of the contract in assessing the motion to dismiss.[16]

## B.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE HE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES BEFORE FILING SUIT.

The doctrine of exhaustion of administrative remedies is well established.[17]  The doctrine

provides "that no one is entitled to judicial relief for a supposed or threatened injury until the

prescribed administrative remedy has been exhausted."[18]   The Supreme Court has long

recognized that exhaustion "serves the twin purposes of protecting administrative agency

authority and promoting judicial efficiency."[19]  These concerns apply with particular force "when

the action under review involves exercise of the agency's discretionary power or when the

agency proceedings in question allow the agency to apply its special expertise."[20]  A person who

has exhausted all administrative remedies available within a state agency and who is aggrieved

by a final decision in a contested case is entitled to judicial review.[21]

---

[15] *Collins v. Morgan Stanley Dean Witter*, 244 F.3d 496, 498–499 (5th Cir. 2000) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim") (internal quotations omitted).

[16] *In re Katrina*, 495 F.3d at 205.

[17] *McKart v. United States*, 89 S. Ct. 1657 (1969).

[18] *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 58 S. Ct. 459, 463, 82 L. Ed. 638 (1938).

[19] *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S. Ct. 1081, 1086, 117 L.Ed.2d 291 (1992).

[20] *Id.; see also Garner v. U.S. Dep't of Labor*, 221 F.3d 822, 825 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1230 (2001).

[21] Tex. Gov't Code Ann. § 2001.171.

Even assuming *arguendo* that Regehr was charged a water surcharge, he does not have standing to bring a private action because he has failed to exhaust his administrative remedies with the PUC.  Accordingly, his complaint should be dismissed.

The passage of House Bill ("HB") 1600 and Senate Bill ("SB") 567 during the 83rd Regular Legislative Session (2013) transferred water rate regulation from the Texas Commission on Environmental Quality ("TCEQ") to the PUC.[22]  As Plaintiff points out in the Complaint, the current rules implementing the Texas Water Code are codified by the PUC at Chapter 22, Subchapter H of the Texas Administrative Code, Section 24.121 *et seq.*[23]

Proceedings concerning the Texas Water Code are subject to the PUC's authority on both substantive rules under Chapter 24 and procedural rules under Chapter 22.   The PUC promulgates and implements its own commission rules that establish procedures for proceedings related to utility service, including disputes concerning water submetering services.[24]  Chapter 22 of the Texas Administrative Code governs proceedings under the Texas Water Code, with the purpose of "provid[ing] a system of procedures for practice before the Public Utility Commission of Texas that will promote the just efficient disposition of proceedings."[25]  As an administrative agency, the PUC is entitled to considerable discretion in implementing its procedural rules, and courts may interfere with those procedures only if they are arbitrary and capricious or deny due process.[26]

---

[22] http://www.opuc.texas.gov/water_utilities.html.

[23] http://www.puc.texas.gov/agency/rulesnlaws/subrules/water/Water.aspx.

[24] http://www.puc.texas.gov/agency/rulesnlaws/Default.aspx.

[25] 16 TEX. ADMIN. CODE § 22.1 (2014) (Pub. Util. Comm'n), available at http://www.puc.texas.gov/agency/rulesnlaws/procrules/pr-a/22.1/22.1.pdf.

[26] *See Cities of Corpus Christi v. Pub. Util. Comm'n of Texas*, 2008 WL 615417 (Tex. App.—Austin, Mar. 5, 2008, no pet.).

GREYSTAR MANAGEMENT SERVICES, L.P., GREP GENERAL PARTNER, LLC, GREYSTAR REAL ESTATE PARTNERS, LLC, SVF CANTEBREA CROSSING AND SVF CANTEBREA CORPORATION D/B/A SVF CANTEBREA GP CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT—PAGE 9
4435219v1 (79980.00002.000)

Chapter 22, Subchapter M governs the procedures and filing requirements for complaints by affected persons claiming a violation of "any rule or regulation of the commission."[27]  An affected person, such as a consumer of water utility service, "must present a complaint to the commission for informal resolution before presenting the complaint to the commission."[28]  The PUC encourages all tenants leasing from property owners to first file a written billing dispute with the person identified on the submetered/allocated water bill about disputes.[29]  If a tenant believes that a PUC rule or regulation has been violated, the PUC encourages tenants to submit their documented findings directly to the PUC,[30] as required by the informal resolution procedure.[31]

Regehr has wholly failed to exhaust the administrative remedies available to him for resolving his billing dispute relating to the alleged water surcharge under the substantive and procedural rules of PUC.  Regehr neither attempted to dispute his water bill directly with Greystar or SVF, as encouraged by PUC,[32] nor submitted any documentation regarding his dispute to the PUC for informal resolution or as a formal complaint to the PUC under Section 22.242.[33]  Regehr's failure to utilize any of his available administrative remedies with the PUC is

---

[27] 16 TEX. ADMIN. CODE §22.242(a) (2001).

[28] 16 TEX. ADMIN. CODE §22.242(c).

[29] https://www.puc.texas.gov/consumer/facts/factsheets/waterfacts/TenantGuideAllocatedService.pdf; https://www.puc.texas.gov/consumer/facts/factsheets/waterfacts/TenantGuideSubmeteredService.pdf.

[30] *Id.*

[31] *See* 16 TEX. ADMIN. CODE §22.242(c) ("**Informal resolution required in certain cases**. A person who is aggrieved by the conduct of [a utility] or other person must present a complaint to the commission for informal resolution before presenting the complaint to the commission.").

[32] https://www.puc.texas.gov/consumer/facts/factsheets/waterfacts/TenantGuideSubmeteredService.pdf ("Disputes about the calculation of your bill or the accuracy of a submeter are between you and the property owner. You are encouraged to file billing disputes in writing with the person identified on your bill to contact about disputes-- usually the owner, the on-site manager, or a billing company.").

[33] 16 TEX. ADMIN. CODE §22.242(c).

**GREYSTAR MANAGEMENT SERVICES, L.P., GREP GENERAL PARTNER, LLC, GREYSTAR REAL ESTATE PARTNERS, LLC, SVF CANTEBREA CROSSING AND SVF CANTEBREA CORPORATION D/B/A SVF CANTEBREA GP CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT—PAGE 10**
4435219v1 (79980.00002.000)

contrary to the exhaustion doctrine and precludes him from judicial review of his billing dispute. A failure to exhaust administrative remedies is jurisdictional in nature because such failure deprives courts of subject-matter jurisdiction over a claim.[34]   Accordingly, Regehr's failure to exhaust his administrative remedies renders this court without jurisdiction over his claims and the Complaint should be dismissed.

C.   **PLAINTIFF'S CLAIMS FAIL BECAUSE THE RENT ADDENDUM, RESERVATION AGREEMENT AND ROCKCREEK BILL DEFINITIVELY PROVE THAT THE FEE IS NOT UNLAWFUL**

Plaintiff asserts statutory and related claims for "unlawful water utility surcharges" allegedly charged by Defendants.[35]   It is undisputed that Plaintiff's Lease specifically incorporated various addenda.[36]   One of those addenda was the Rental Addendum.  The Rental Addendum plainly states that Plaintiff would be charged a one-time $12.50 "billing convergent fee."[37]   Although Plaintiff now disputes the authenticity of the Rental Addendum—even though it bears his signature—the Reservation Agreement and RockCreek Bill also reflect that the $12.50 charge at issue was not an "unlawful water utility surcharge," but was instead related to the billing function at Plaintiff's apartment.  It was a one-time fee to converge Plaintiff's bills into a single statement.  Such a fee is not unlawful and nothing in the Complaint supports a claim for an allegedly improper fee for billing convergence.

D.   **PLAINTIFF FAILED TO PLEAD FACTS THAT PERMIT THE COURT TO INFER MORE THAN THE MERE POSSIBILITY OF MISCONDUCT AND THAT ARE NOT COMPATIBLE WITH AND MORE LIKELY EXPLAINED BY LAWFUL BEHAVIOR.**

---

[34] *Lueck v. State*,  325 S.W.3d 752, 762 (Tex. App.—Austin 2010, pet. denied).

[35] *See* Amend. Comp. at ¶ 24.

[36] *See* Amend. Compl., Ex. A at ¶ 43.

[37] *See* Ex. 1.

The Rent Addendum, Reservation Agreement and RockCreek Bill make clear the purpose of the Fee, and make it clear that a "water surcharge" was never charged. The Fee was a billing convergent fee charged by a third-party biller—RockCreek—in relation to combining Plaintiff's various bills into a single bill. The Fee relates only to the billing function at the apartment complex and not water.

In order for Plaintiff to state a viable claim based on an allegedly impermissible water surcharge, he must plead facts that "permit the court to infer more than the mere possibility of misconduct," and that are not "compatible with" and, in fact, "more likely explained by, lawful behavior."[38] Plaintiff failed to meet this basic requirement and dismissal is therefore warranted. Plaintiff's allegations rely on a single account ledger that refers to the Fee as a "Utility Fee" and ignores every single document related to the Lease which reveals the true purpose of the Fee.[39] Plaintiff then desperately speculates that because the billing convergent fee is labeled as "Utilities" on the tenant ledger, it must be a water surcharge because "[t]he term 'utilities' is discussed and defined in Plaintiff's Lease to include only water/wastewater service."[40] Plaintiff's allegation is false. The provision on which this claim is based is the "Special Provisions" section of the Lease which specifically states:

> SPECIAL PROVISIONS. The following or attached special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

> Utility charges defined per the Utility Addendum will be billed each month based on the billing formula specified on the lease addendum and may vary each month.[41]

---

[38] *See Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009).

[39] *See* Amend. Comp. at ¶ 49.

[40] *See* Amend. Comp. at ¶ 45.

[41] *See* Amend. Comp. Ex. A ¶10.

This provision does not define the term "Utilities" which appears on the tenant ledger as a water or wastewater charge. Further, one need not undertake the tortured analysis that Plaintiff sets out in the Complaint in order to decipher the purpose of the $12.50 "Utilities" charge on the tenant ledger. Instead, one need only review the RockCreek Bill that Plaintiff received which discloses that the $12.50 charge was for a "Convergent Bill Activation Fee Flat Charge"—a charge relating to the billing function at the apartment complex and not an impermissible water surcharge. Although Plaintiff argues that a "Convergent Bill Activation Fee" is meaningless jargon created to hide a water surcharge, the water and wastewater charges are specifically identified in the RockCreek Bill and tenant ledger and the Convergent Bill Action Fee is no more a "water surcharge" than the Trash Allocation Charge, Trash Admin. Fee or Pest Control Fee set out in the RockCreek Bill and tenant ledger. Thus, the Complaint, at best, alleges conduct that is consistent with and more likely explained by conduct that is not covered by the Texas Water Code.[42]

Furthermore, the sub-metering provisions of the Texas Water Code also foreclose Plaintiff's claims to the extent the Fee stems from the cost of using a third-party biller. The relevant statutes and regulations only concern overcharges for water and wastewater service. They do not address how apartment owners may allocate costs for other utilities and amenities, such as trash and consolidated billing services. The "prohibited charges" under the Texas Water Code and related regulations extend only to certain fees stemming from "the retail public utility."[43] A "retail public utility" includes only persons and entities that "provid[e] potable water service or sewer service, or both, for compensation—they do not include third-party billing

---

[42] See *Iqbal*, 556 U.S. at 679–80.

[43] See 16 TEX. ADMIN. CODE § 24.124(a) (emphasis added).

companies.[44]   The submetering regulations, moreover, specifically use the term "third-party

billing company," demonstrating that the omission of that term from the "prohibited charges"

provision was no accident.[45]   One of the most basic canons of statutory construction holds that

the selective use or omission of specific terminology from one provision to another indicates a

variation of intended meaning.[46]   Thus, charges that stem from a third-party biller are not

prohibited charges.

In light of the nuanced nature of Texas submetering law, Plaintiff pleads only conduct

that is just as "compatible with" and, in fact, "more likely explained by, lawful . . . behavior"

than illegal billing.[47]   He fails to plead how the Fee was not a permissible pass-through charge

under Texas law, or constituted a "prohibited charge" that was first "billed to the owner by the

retail public utility," and not a third-party biller.[48]   These omissions require dismissal.

**E.**   **PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO JOIN INDISPENSABLE THIRD PARTIES.**

Federal Rule of Civil Procedure 12(b)(7) allows dismissal for "failure to join a party

under Rule 19."  Rule 19 provides for the joinder of all parties whose presence in a lawsuit is

required for the fair and complete resolution of the dispute at issue.[49]

Rule 12(b)(7) analysis entails two inquiries under Rule 19.   The court must first

---

[44] *See* TEX. WATER CODE § 13.002(19); 16 TEX. ADMIN. CODE § 24.3(41).

[45] *see* 16 TEX. ADMIN. CODE § 24.125(j),

[46] *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here [a legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion.'" (citation omitted)).

[47] *See Iqbal*, 556 U.S. at 679–80.

[48] *See, e.g.*, TEX. WATER CODE § 13.503(b); 16 TEX. ADMIN. CODE § 24.124(a).

[49] Fed. R. Civ. P. 19(a); *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986).  ("The federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of.  In accord with this goal, Rule 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder" (citations omitted)).

determine under Rule 19(a) whether a person should be joined to the lawsuit. If joinder is warranted, then the person will be brought into the lawsuit. Here, Plaintiff seeks to certify the following a class of individuals:

> All Texas residents who, within four years preceding the date this case was filed, were residential tenants under written leases at apartment properties in the State of Texas where (i) Greystar served as owner, landlord or manager, and/or (ii) [SVF] was the legal titleholder and who were charged and paid a Water Utility Fee.[50]

Consequently, Plaintiff seeks to certify a class relating to numerous apartment complexes owned by different individuals and entities (where title to many of the apartment complexes has likely been transferred during the putative class period) who utilized different third-party billing companies (which may have changed during the putative class period) to charge the Fee or a similar charge. Although Plaintiff maintains that Greystar is a common thread that ties many of these apartment owners together, Greystar did not charge or receive the Fee at issue in this litigation. Likewise, SVF has absolutely nothing to do with any Fee that was charged by owners of other apartment complexes. As a result, the third-party billing companies and various apartment complex owners are indispensable parties to this litigation.

Federal Rule of Civil Procedure 19(b) provides:

> **When Joinder is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed....

Factors to consider under Rule 19(b) include "(1) prejudice to an absent party or others in the lawsuit from a judgment; (2) whether the shaping of relief can lessen prejudice to absent parties; (3) whether adequate relief can be given without participation of the party; and (4)

---

[50] *See* Amend. Comp. ¶ 68.

whether the plaintiff has another effective forum if the suit is dismissed."[51]  In this case, each of these factors weighs in favor of dismissing this lawsuit.  The parties responsible for charging and receiving the fee—the unnamed billing companies and owners—will clearly be prejudiced if they are unable to defend themselves in relation to the fees that Plaintiff claims violate the Texas Water Code.  This is particularly true where Plaintiff asserts that Fees which are plainly labeled for purposes other than water or waste water violate the Texas Water Code.  Moreover, relief cannot be shaped in this matter to lessen the prejudice to absent parties and adequate relief cannot be given without participation of such parties since the non-party billing companies and various apartment complex owners are the ones that charged and received the Fee at issue in this litigation.  Finally, Plaintiff has another effective forum if this lawsuit is dismissed—the PUC.  As a result, in the event that joinder of all indispensable parties is not feasible, the Court should dismiss this lawsuit.

## F.   CLASS TREATMENT IS IMPROPER AND SHOULD BE STRICKEN OR LIMITED

Plaintiff's class allegations should be dismissed or stricken or, at a minimum, limited with respect to the size of the putative class.

### 1.   *Plaintiff's Class Allegations are Insufficient*

Plaintiff's class allegations ignore federal pleading standards.  The "class action allegations" section of the Complaint, consists almost entirely of boilerplate "labels," "conclusions," and "formulaic recitations" of Rule 23's elements.[52]  But "[m]ere repetition of the language of Rule 23(a) is not sufficient.  There must be an adequate statement of the basic facts

---

[51] *Cornhill Ins. PLC v. Valsamis, Inc.,* 106 F.3d 80, 84 (5th Cir. 1997) (citing Fed. R. Civ. P. 19(b)); *see also* 5A Wright & Miller, *Federal Practice & Procedure* § 1359, at 426 ("The burden is on the moving party to show the nature of the unprotected interests of the absent parties."); *see also* Fed. R. Civ. P. 19(b).

[52] *See* Amend. Comp. ¶¶ 64-85; *see also* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

to indicate that ***each requirement*** of the rule is fulfilled.'"[53]   The Complaint fails this fundamental requirement of federal pleading.  The Court, therefore, can and should dismiss his class allegations under Rule 12(b)(6).[54]

      This putative class action suffers from still more fundamental defects.  Plaintiff's conclusory superiority allegations, for example, sharply contrast with the remedies in the Water Code's private right of action, which permits recovery for (1) treble the amount of any overpayments, (2) civil penalties equal to one month's rent, (3) attorneys' fees, and (4) costs.[55] These remedies would provide a successful individual plaintiff at least a four-figure recovery. Where the statute allows the recoupment of attorneys' fees as a matter of right, it is implausible to allege that "it would be virtually impossible for class members to seek redress on an individual basis."[56]

      Additionally, the very nature of Plaintiff's theory of liability necessarily requires that individual considerations predominate over questions common to the proposed class.  Assuming, for example, that the Court ignores the characterization of the Fee as "billing convergence," then treatment of the Fee under the Texas Water Code will depend on a host of considerations incongruent with class treatment.  Those considerations include, at minimum, an analysis of (1)

---

[53] *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.4 (5th Cir. 2007) (citation omitted).

[54] *See id.* at 445 (dismissing class action and holding that "a district court may dismiss the class allegation on the pleadings" where it is "facially apparent from the pleadings" that a class action is improper); *Gloria v. Allstate Cnty. Mut. Ins. Co.*, No. 99-CA-676, 2000 WL 35754563, at *9 (W.D. Tex. Sept. 29, 2000) (striking class allegations where plaintiff made only "[c]onclusory class allegations," lacked standing, and failed to state a claim); *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled."); *Gloria*, 2000 WL 35754563, at *9 (dismissing class at pleading stage); *Schilling v. Kenton Cnty., Kentucky*, No. 10-143-DLB, 2011 WL 293759, at *5 (E.D. Ky. Jan. 27, 2011); *Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243 (W.D.N.Y. 2010).

[55] TEX. WATER CODE § 13.505.

[56] *See* Amend. Comp. ¶ 82.

GREYSTAR MANAGEMENT SERVICES, L.P., GREP GENERAL PARTNER, LLC, GREYSTAR REAL ESTATE PARTNERS, LLC, SVF CANTEBREA CROSSING AND SVF CANTEBREA CORPORATION D/B/A SVF CANTEBREA GP CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT—PAGE 17
4435219v1 (79980.00002.000)

the "rate structure" used by the specific "retail public utility" servicing each of "over fifty" apartment communities in Texas, (2) the fees and surcharges actually charged by those "retail public utilities," (3) the master water and wastewater bills for each apartment community and (4) each individual account statement, lease, or related documents during the class period for each of the 60,000 alleged apartment units in Texas.[57]   Furthermore, an individualized analysis into every fee included in residential tenant bills, regardless of nomenclature, will be required since Plaintiff asserts that these bills include labels which are meaningless jargon used to hide improper water surcharges.   The Fifth Circuit has affirmed the denial of class certification for much simpler claims.[58]   Because Plaintiff's best case scenario would require a granular and individualized determination of various issues, the Court should dismiss the class Complaint at the pleading stage.

      2.    *At a Minimum, the Court Should Limit the Size of the Putative Class.*

Even inadequately pled, the Complaint facially demonstrates that Plaintiff seeks to certify an overly broad class.   Plaintiff alleges that he signed a Lease with Alara Cantebrea, which was managed by Riverstone Residential Group ("Riverstone"), in June 2013.[59]   Plaintiff also alleges that Greystar merged with Riverstone in June 2014.[60]   Consequently, Plaintiff, at best, asserts claims for paying an allegedly improper fee charged at Riverstone properties, and not any of the pre-merger properties which Greystar owned or managed.   The Complaint, therefore, pleads no plausible basis for defining the putative class to encompass all post-merger Greystar properties.

---

[57] *See, e.g.*, 16 TEX. ADMIN. CODE § 24.124(b)–(c); *see also* TEX. WATER CODE § 13.503(b).

[58] *See Benavides v. Chi. Title Ins. Co.*, 636 F.3d 699, 701 (5th Cir. 2011) (observing that determination of liability and damages for common class-wide question required "extensive file-by-file review to sort out the factual details as to each plaintiff").

[59] *See* Amend. Comp. ¶ 43.

[60] *See* Amend. Comp. ¶ 20.

Plaintiff leased a legacy Riverstone property and the Fee was allegedly imposed by Riverstone's third party biller.  Nothing in the Complaint plausibly suggests that Greystar imposed a similar Fee at its properties.  Accordingly, the Court may dismiss the Complaint or strike the improper class allegations on the additional ground that any putative class action must be limited to pre-merger Riverstone properties, and not involve any pre-merger Greystar properties.

WHEREFORE, Defendants respectfully request that the Court dismiss the First Amended Complaint without leave to amend, and that it grant Greystar and SVF any other or further relief, at law or in equity, to which they may be entitled.

Dated:  June 3, 2016

Respectfully submitted,

/s/  C. Jeffrey Novel
Michael A. Logan
State Bar No. 12497500
mlogan@krcl.com
C. Jeffrey Novel
State Bar No. 24037198
jnovel@krcl.com

KANE RUSSELL COLEMAN & LOGAN PC
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas  75201
Telephone:    (214) 777-4294
Facsimile:    (214) 777-4299

**ATTORNEYS FOR DEFENDANTS GREYSTAR MANAGEMENT SERVICES, L.P., GREP GENERAL PARTNER, LLC, AND GREYSTAR REAL ESTATE PARTNERS, LLC**

## CERTIFICATE OF SERVICE

     I hereby certify that on June 3, 2016, I electronically filed the foregoing document with the clerk for the United States District Court for the Western District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to attorneys of record, who have consented in writing to accept this Notice as service of this document by electronic means.

                                 */s/  C. Jeffrey Novel*
                                   C. Jeffrey Novel