IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JUSTIN REGEHR,
        Plaintiff,

-vs-

GREYSTAR MANAGEMENT
SERVICES, L.P., GREP GENERAL
PARTNER, LLC, GREYSTAR REAL
ESTATE PARTNERS, LLC, SVF
CANTEBREA LP, and SVF
CANTEBREA CORPORATION,
        Defendants.

CAUSE NO.:
A-15-CA-00501-SS

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Greystar Management Services, L.P., GREP General Partner, LLC, and Greystar Real Estate Partners, LLC (collectively, Greystar) and SVF Cantebrea LP and SVF Cantebrea Corporation (collectively, SVF)'s Motion to Dismiss [#66], Plaintiff Justin Regehr's Response [#69] in opposition, and Greystar and SVF's Reply [#70] in support, as well as Regehr's Unopposed Motion for Leave to File Sur-Reply [#71]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This case involves an alleged violation of Section 13.503(b) of the Texas Water Code, which prohibits an "apartment house owner" from imposing "any extra charges, over and above the cost per gallon and any other applicable taxes and surcharges that are charged by the retail public utility to the owner or manager." TEX. WATER CODE § 13.503(b). It is undisputed that

Greystar, the manager of the "apartment house" where Plaintiff Justin Regehr lived,[1] and SVF, its owner, charged Regehr a one-time "[u]tilities" fee of $12.50 which appeared on his first monthly bill. Am. Compl. [#63] ¶¶ 41, 48. Regehr claims this "[u]tilities" fee constitutes a "Water Connection Fee" that Greystar or SVF simply made up. *Id.* ¶ 49. If Regehr's allegations are true, this fee violates Section 13.503(b) because it imposes "extra charges, over and above" what Greystar and SVF were charged by the public utility company. Regehr seeks to certify a class of current and former tenants who paid a similar fee at apartment houses in Texas where "(i) Greystar served as owner, landlord or manager, and/or (ii) SVF[] was the legal titleholder." *Id.* ¶ 68.

On February 8, 2016, the Court entered an order granting Greystar's motion to dismiss, concluding Greystar is not an "owner" under the Water Code. *See* Ord. of Feb. 8, 2016 [#50]. In that Order, the Court also dismissed Regehr's claims against SVF for failure to plead specific facts showing the "[u]tilities" fee relates to water and not some other utility. Regehr subsequently filed a motion for reconsideration of the February 8, 2016 Order, which the Court granted in part and denied in part. Order of February 8, 2016 [#62] at 6. Specifically, the Court held Greystar *is* an "owner" under the Water Code, but nevertheless dismissed Regehr's complaint for failure to sufficiently allege the "[u]tilities" fee relates specifically to water. *Id.* at 6. The Court granted Regehr twenty days to replead his factual allegations with greater specificity. On May 20, 2016, Regehr filed an amended complaint. Am. Compl. [#63]. *Id.* at 7. On June 3, 2016, Greystar and SVF moved to dismiss Regehr's amended complaint, and Regehr responded on June 30, 2016. *See* Mot. Dismiss [#66]; *see* Resp. [#69]. The motion is now ripe for decision.

---

[1] Greystar is the successor in merger to Riverstone Residential, a large apartment owner. For purposes of this Order, the term "Greystar" refers to the Greystar entities in their capacity as apartment managers and as successors in merger to Riverstone.

2

## Analysis

### I. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by

3

reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**II.  Application**

Greystar and SVF assert the following arguments in support of their motion to dismiss: (1) Regehr failed to exhaust his administrative remedies with the Public Utility Commission of Texas (PUC) and the Court therefore lacks subject-matter jurisdiction over his claims; (2) Regehr again fails to plead sufficient facts to state a plausible claim that the "[u]tilities" fee is an extra charge which relates specifically to water; (3) the lawsuit should be dismissed because Regehr failed to join indispensable parties, namely other property owners and billing companies; and (4) class treatment is unworkable because many of the apartments named in Regehr's complaint are owned by separate companies—not SVF—which charge separate fees through separate billing services.

As explained below, the Court finds Greystar and SVF's arguments are without merit and therefore DENIES Greystar and SVF's motion to dismiss.

**A.  Regehr was not required to exhaust his administrative remedies.**

Greystar and SVF argue this Court lacks subject-matter jurisdiction because Regehr has failed to exhaust his administrative remedies before filing suit.

Texas courts are courts of general jurisdiction with the power to hear "all actions . . . except in cases where exclusive . . . jurisdiction may be conferred . . . on some other court, tribunal, or administrative body." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002) (quoting TEX. CONST. art. V. § 8). "Courts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made." *Id.* In contrast, administrative agencies "only have the powers conferred on them by clear and express statutory

4

language or implied powers that are reasonably necessary to carry out the Legislature's intent." *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). Accordingly, an agency has exclusive jurisdiction only when the Legislature has granted it the "sole authority to make an initial determination in a dispute," or in other words, "when a pervasive regulatory scheme indicates [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *David McDavid Nissan*, 84 S.W.3d at 221. When an agency has exclusive jurisdiction, courts of general jurisdiction lack subject-matter jurisdiction until a party's administrative remedies have been exhausted. Whether an agency has exclusive jurisdiction is a question of statutory interpretation. *Id.*

   i.  **The concurrent availability of administrative and judicial remedies to enforce the Water Code suggests the Legislature did not intend to grant the PUC exclusive jurisdiction.**

The availability of administrative and judicial remedies to enforce the Water Code and its implementing regulations suggests the Legislature did not intend to grant the PUC the "sole authority" to resolve Water Code disputes. First, Section 13.505 permits a tenant to sue a landlord for damages in the amount of three times the overcharge. Where a statute provides for a private cause of action for damages, Texas courts have concluded the Legislature did not intend to grant the agency exclusive jurisdiction. *See, e.g., Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 446 S.W.3d 58, 71 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (concluding the Legislature did not intend to grant the Railroad Commission exclusive jurisdiction where, in addition to an established common law remedy, there was a "private cause of action for damages based on a violation of . . . a Railroad Commission rule or order"); *In re Discovery Operating, Inc.*, 216 S.W.3d 898, 903 (Tex. App.—Eastland 2007, no pet.) (concluding a statutory provision which provided for a private cause of action for damages "clearly indicates that the [L]egislature

5

did not intend for the regulatory process to be the exclusive means of remedying the problem but, rather, that the [L]egislature intended for aggrieved parties to have a right to bring suit and litigate their causes of action in an appropriate court").

Second, Section 13.505 provides a tenant with a right to recover damages against an apartment house owner "[i]n addition to the enforcement provisions contained in Subchapter K." TEX. WATER CODE § 13.505. Subchapter K authorizes the Texas Attorney General to bring suit "in a court of competent jurisdiction" against a public utility company or any other person or entity violating the Water Code or its implementing regulations. TEX. WATER CODE § 13.411. The Legislature therefore envisioned situations where a court—not the PUC—makes an initial determination in a dispute.

Third, the Water Code provides for several enforcement mechanisms, including criminal charges and administrative penalties in addition to civil suits by the Attorney General. TEX. WATER CODE §§ 7.105, 7.141–.203, 7.051–.075. These judicial and administrative remedies are "cumulative of all other remedies," and "the right of a private corporation or individual . . . to recover damages to enforce a right, or to . . . seek redress or compensation for violation of a right" remains intact. TEX. WATER CODE § 7.004. Given the plethora of judicial remedies available under the Water Code, it cannot be said the Legislature intended to grant the PUC exclusive jurisdiction to adjudicate disputes in the first instance.

> ii. **The Legislature did not clearly and expressly give the PUC exclusive jurisdiction.**

Had the Legislature intended to grant the PUC exclusive authority to make an initial determination in a dispute, it would have done so. *See, e.g.*, TEX. UTIL. CODE § 32.001(a) (stating the PUC has "exclusive original jurisdiction over the rates, operations, and services of an electric utility" in specified areas); TEX. UTIL. CODE § 52.002(a) (stating the PUC has "exclusive original

6

jurisdiction over the business and property of a telecommunications utility" in Texas). Where the Legislature gives an agency "exclusive, original jurisdiction" rather than "general and original power and jurisdiction," the Legislature's intent to grant an agency exclusive jurisdiction is clear. *David McDavid Nissan*, 84 S.W.3d at 223. Here, there is no statutory language indicating the Legislature's "clear and express" intent to give the PUC exclusive jurisdiction, despite the Legislature's history of doing so in unmistakable terms.

In light of the foregoing, the Court concludes the Legislature did not intend to grant the PUC "sole authority to make an initial determination in a dispute." *Thomas*, 207 S.W.3d at 340. Accordingly, Regehr's failure to exhaust his administrative remedies does not deprive this Court of subject-matter jurisdiction.[2]

**B.      Regehr has pled sufficient factual allegations to state a plausible claim for relief.**

Greystar and SVF contend Regehr has failed to plead a facially plausible claim that Greystar and SVF violated Section 13.503 of the Water Code by imposing an unlawful charge for water. To survive Greystar and SVF's motion to dismiss, Regehr must show the "[u]tilities" fee was related—at least in part—to water and is therefore in violation of Section 13.503.

Section 13.503(b) of the Water Code states:

> In addition to other appropriate safeguards for the tenant, the rules shall require that, except as provided by this section, an apartment house owner . . . may not impose on the tenant any extra charges, over and above the cost per gallon and

---

[2] In the alternative, Greystar and SVF assert for the first time in their reply the PUC has primary jurisdiction in this dispute, and therefore the case should be dismissed. "The judicially-created primary jurisdiction doctrine operates to allocate power between courts and agencies when both have authority to make initial determinations in a dispute." *Forest Oil Corp.*, 446 S.W.3d at 68. The primary jurisdiction doctrine requires a court to defer to an agency when: "(1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations." *David McDavid Nissan, Inc.*, 84 S.W.3d at 221. Here, Greystar and SVF do not suggest courts and juries would reach different results than the PUC under similar fact situations, nor do they proffer any explanation as to what complex technical terms demand agency expertise. This ground for dismissal therefore fails.

Because the Court finds this argument is without merit, additional briefing is unnecessary. Accordingly, the Court DENIES Regehr's Unopposed Motion for Leave to File Sur-Reply [#71].

any other applicable taxes and surcharges that are charged by the retail public utility to the owner or manager.

TEX. WATER CODE § 13.503(b).

The rules implementing Section 13.503(b) are intended "to establish a comprehensive regulatory system to assure that the practices involving submetered and allocated billing of dwelling units and multiple use facilities for water and sewer utility service are just and reasonable and include appropriate safeguards for tenants." TEX. ADMIN. CODE § 24.121(a). Section 24.124 of the Texas Administrative Code states in relevant part:

> Prohibited charges. Charges billed to tenants for submetered or allocated utility service may only include bills for water or wastewater from the retail public utility and must not include any fees billed to the owner by the retail public utility for any deposit, disconnect, reconnect, late payment, or other similar fees.

*Id.* § 24.124(a).

Regehr has pled sufficient facts linking the "[u]tilities" fee on his first monthly bill to water utility charges in his lease. Regehr alleges the term "[u]tility" as used in his lease refers only to water and wastewater services. Paragraph 10 of his lease states, "[u]tility charges defined per the Utility Addendum will be billed each month based on the billing formula specified on the lease addendum and may vary each month." Am. Compl. [#63-1] Ex. A (Regehr Lease) ¶ 10. As an initial matter, the "Utility Addendum" does not refer to electricity or gas, because Greystar did not bill for these services. *See id.* ¶ 43. Thus, there are three addenda attached to the lease which could constitute the "Utility Addendum": "Water/wastewater Submetering," "Trash Removal and Recycling Costs," and "Pest Control Services Costs." *Id.* at 15, 19, 26. According to Regehr, neither the "Trash Removal and Recycling Costs" addendum nor the "Pest Control Services Costs" addendum constitutes the "Utility Addendum." *See* Am. Compl. [#63] ¶ 56–57. Both the trash and pest control services were provided by either a third-party provider or the

8

owner, not the City of Austin, and therefore are not "utilities" based on industry custom and usage. *Id.* Moreover, the addenda for trash and pest control services provide for fixed monthly billing, indicating these services were not determined via a "billing formula" where the monthly charge "may vary." *See* Regehr Lease ¶ 10. The "Water/wastewater Submetering" addendum, on the other hand, confirms a tenant's monthly bill varies depending on his water consumption. *Id.* at 15.

In addition, Paragraph 43 of Regehr's lease supports Regehr's claim that the only "[u]tility" referred to in Regehr's lease is water and wastewater services. Paragraph 43 provides a list of addenda attached to the lease if the box next to the item is checked. *Id.* ¶ 43. The only addendum listed using the term "utility" is entitled "Utility Submetering Addendum." *Id.* Next to the checked box for the "Utility Submetering Addendum" are boxes for electric, water, and gas; only the box for "water" is checked. *Id.* This suggests the "Utility Submetering Addendum" refers to the "Water/wastewater Submetering" addendum, and further suggests the term "[u]tility" as used in Regehr's lease includes only water and wastewater services.

In their motion to dismiss, Greystar and SVF rely heavily on an addendum allegedly attached to Regehr's lease entitled the "RRG Rental Addendum," which states Regehr will be charged a one-time $12.50 "billing convergence fee," as well as Regehr's second monthly bill, which reveals Regehr was charged a $12.50 "Convergent Bill Activation Fee." Mot. Dismiss [#66-1] Ex. 1 (Rental Addendum) at 1; Am. Compl. [#63-3] Ex. C (Second Monthly Bill) at 4. Greystar and SVF argue the "[u]tilities" fee was actually a billing convergence fee which was paid directly to a "third-party biller" and is therefore lawful under the Water Code. Mot. Dismiss [#66] at 11. Regehr challenges the authenticity of the addendum and therefore the Court's

consideration of it, since the addendum is not referenced in Regehr's amended complaint and purportedly was not part of the lease provided by Greystar and SVF and signed by Regehr.[3]

Even accepting Greystar and SVF's argument that the $12.50 fee labeled "[u]tilities" constituted a billing convergent fee, the Court finds Regehr has pled sufficient facts to state a plausible claim that this fee was at least partially related to water and was paid to Greystar and SVF, not a third-party biller. In his amended complaint, Regehr attaches his second monthly bill in which the utility charges for Regehr's apartment are itemized. Second Monthly Bill at 4. Of the nine charges itemized, four of them relate to water or wastewater. *See id.* (listing "Water Base Charge," "Water Consumption," "Sewer Base Charge," and "Sewer Consumption"). Assuming the billing convergent fee consolidated all of Regehr's fees, at least a portion of it— 4/9 or 44.44%—is attributable to water and wastewater. Taking these facts as true, a portion of the fee is impermissible because it is unrelated to any charge imposed by the public utility company on the landlord. The Court therefore concludes Regehr has shown the term "[u]tilities" which appeared on Regehr's first monthly bill plausibly refers to water and wastewater services and constitutes an "extra charge[], over and above the cost per gallon and any other applicable taxes and surcharges that are charged by the retail public utility to the owner or manager." *See* TEX. WATER CODE § 13.503(b).

## C.     There are no indispensable parties who have yet to be joined.

Greystar and SVF argue Regehr's complaint should be dismissed for failure to join indispensable parties, namely the property owners other than SVF and the billing companies that Greystar and SVF describe as "[t]he parties responsible for charging and receiving the fee." Mot.

---

[3] Regehr aptly points out that even if the billing convergence fee was paid directly to a third-party biller, there is no exception in the Water Code for "extra charges" stemming from a third-party biller. *See* Resp. [#69] at 16. A public utility company does not impose third-party biller fees on a tenant, and thus Section 13.503(b) prohibits a landlord from passing these fees on to a tenant.

Dismiss [#66] at 16. Greystar and SVF insist "Greystar did not charge the fee or receive the fee at issue in the litigation," and "[a]s a result, the third-party billing companies and other property owners are indispensable parties to this litigation." *Id.* at 3.

This ground for dismissal fails, however, because the Court could "accord complete relief among existing parties" even if the other property owners and billing companies are not parties in the lawsuit. FED. R. CIV. P. 19(a)(1)(A). Regehr has plainly alleged Greystar and SVF received the unauthorized fees at issue, and at the motion to dismiss stage, the Court accepts as true all factual allegations contained within the complaint. Moreover, to the extent Greystar and SVF argue the other property owners and billing companies are joint tortfeasors and therefore constitute indispensable parties, their argument is without merit. It is well-established that joint tortfeasors are not indispensable parties. *See Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880–81 (5th Cir. 1987) (concluding Rule 19 does not require the joinder of joint tortfeasors, principal and agent, or contributors to the award).

**D.    The Rule 23 motion challenging class certification is premature.**

Although there is no motion for class certification pending, and according to Regehr, no discovery has been conducted, Greystar and SVF seek to dismiss Regehr's claims for failure to meet the class certification requirements of Federal Rule of Civil Procedure 23. The Court has already held consideration of the class certification issue is premature, and it does so again today. *See* Ord. of June 23, 2015 [#5]. The gravamen of Greystar and SVF's 12(b)(6) motion to dismiss is their challenge to the legal sufficiency of Regehr's claims, yet their challenge to Regehr's class allegations assumes the viability of these claims in arguing there are no common questions of fact and law warranting class certification. Regehr has set forth a pleading that complies with the requirements of Rule 12(b)(6); that is all he is required to do at this stage in the litigation.

11

Greystar and SVF's challenge to Regehr's class allegations is more appropriately addressed when the Court determines the class certification issue after Regehr has reurged his motion for certification.

## Conclusion

Accordingly,

    IT IS ORDERED that Defendants Greystar and SVF's Motion to Dismiss [#66] is DENIED; and

    IT IS FINALLY ORDERED that Plaintiff Justin Regehr's Unopposed Motion for Leave to File Sur-Reply [#71] is DENIED.

SIGNED this the 20th day of July 2016.

                                    *Sam Sparks*
                            SAM SPARKS
                            UNITED STATES DISTRICT JUDGE